**Joseph Bernard NICHOLS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 68981.**

Court of Criminal Appeals of Texas,
En Banc.

April 13, 1988.

E. Neil Lane, Brian W. Wice (on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Richard Anderson, Winston E. Cochran, Jr. and Ira Jones, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A., Penal Code Sec. 19.03(a)(2).[1] After finding appellant guilty, the jury returned affirmative findings to the three special issues under Art. 37.-071(b), V.A.C.C.P. Punishment was assessed at death. We will affirm.

With leave of this Court, appellant has filed two briefs raising a total of twenty-six points of error.[2] For logistic purposes, we will not address the points of error in numerical order, but will address them in chronological trial order, consolidating points whenever possible.

The relevant facts may be briefly stated. On October 13, 1980, at approximately 9:00 a.m., appellant and Willie Ray Williams entered Joseph's Delicatessen and Grocery with the plan to commit a robbery. As they approached the cash register, both men pulled guns on Claude Shaffer, the seventy year old victim. Shaffer bent down behind the counter, and it is controverted whether he was reaching for an unloaded pistol kept behind the store counter or whether he was simply taking cover. Appellant stated "Don't try it" and opened fire on Shaffer. It is unclear whether appellant's shots hit Shaffer. Appellant and Williams then turned and started to flee. As they reached the door, Williams turned and shot at Shaffer. Again, it is unclear which shot contacted the victim. Both men fled but, after running out of the Deli, Williams stopped and went back into the Deli, alone. Williams took the cash box from behind the counter where the victim had been standing and ran out of the store. Both men were picked up by two females in a blue Toyota.

Although shot in the left temple and shoulder, Shaffer died as a result of a single gunshot wound to his back. Ballistics investigation could not determine which gun caused this wound. Appellant and Williams netted a total of eight or nine dollars from the robbery.

In his eighth point of error, appellant challenges the admissibility of his confession. His argument, while extremely amorphous, can be organized into a three-fold challenge. First, appellant asserts a Sixth Amendment violation, second, an involuntary *Miranda*[3] waiver and third, a violation of his Fifth Amendment request for counsel. After a careful review of each we find that the confession was properly admitted.

The relevant facts from the suppression hearing are as follows. Pursuant to statements given by other participants in the offense and a photo I.D. made by a wit-

---

**1.** This is the second time appellant has been tried and convicted for this offense. The first trial ended in a mistrial at the punishment phase when the jury could not reach a unanimous verdict on special issue number two. *See,* Art. 37.071(b)(2), V.A.C.C.P., and this Court's response to appellant's ninth point of error.

**2.** Mr. E. Neil Lane, Esq., one of appellant's trial attorneys, filed a brief raising six points of error. Mr. Brian Wice submitted a second brief on appellant's behalf after being allowed to substitute as appellate counsel. Tex.R.App.Proc., R.

7 and 74(*o*). This second brief raises twenty points of error and constitutes the majority of the issues addressed in this opinion. All references to appellant's points of error are to those raised in Mr. Wice's brief unless otherwise noted.

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This case is referred to throughout as *Miranda,* with no subsequent citation thereof.

ness, appellant became a suspect of the instant offense. Officer R.D. Anderson, a detective with the Houston Police Department assigned to the case, learned that appellant would be returning to the home of Eddy Henderson on the evening of October 17, 1980. Officer Anderson and his partner, Dollins, went to Henderson's home at approximately 7:40 p.m. and awaited appellant's arrival. Appellant arrived within 30 minutes, was placed under arrest and read his *Miranda* warnings.

Appellant was taken to the Houston Police Department where he was once more given his *Miranda* warnings. Appellant then, after acknowledging that he understood his rights, waived them and gave a tape recorded and written confession to the instant offense. The confession was signed at 10:15 p.m. The face of the confession contains the requisite warning and waiver of rights as required by Art. 38.22, V.A.C.C.P. The confession read as follows:

"My name is Joseph Bernard Nichols. I am 19 years of age. I live at 3922 Prudence with friends. I was born on 9–8–61. I was coming from the motel. I think it was the Act II Motel. I was with Will, Charlotte and Evelyn. We were riding and we got on a conversation about robbing. We came upon this little store off of Fannin Street. Charlotte was driving. We passed by the store the first time and we saw one car parked in front of the store. We all decided that this was all right to hit.

"We parked down the street in front of some apartments. Me and Will went in the store. We pulled out our guns on the dude behind the cash register and told him to put the money in the sack. The man behind the counter started bending over behind the counter. He had bent over so far that we couldn't see him. Then he came up with a pistol. I guess he was getting ready to shoot. He was fixing to shoot us. So we reacted and shot. I was scared cause I just knew that he was fixing to shoot one of us. So we reacted and shot.

"I ran out of the store and through the alley and around to the back of the apartment complex. I ran around to the front of the apartments and I didn't see the car and I stood in the middle of the street looking around for the car, and then they came around the corner. I jumped in the car and we went straight home on Prudence.

"On Wednesday I took the gun back to the dude that I got it from. I don't know his name. He just hangs on the corner of Calumet and Live Oak. I want to say that we did not mean to kill the man. When he come up from behind the counter, he had pulled a gun on us." [/s/] Joseph Nichols.

At the suppression hearing, appellant testified that at approximately 3:00 p.m. on the day of his arrest he injected preludin, drank some beer and smoked marihuana. Tyrone Williams, a friend of appellant's who was with appellant throughout the day of arrest and who also partook of some intoxicants, testified that appellant appeared "high" after initially ingesting the intoxicants. On cross-examination, Williams further testified that appellant was at all times able to walk and talk, knew where he was and was not "out of his head."

At the conclusion of the suppression hearing, the trial court found the confession admissible and made the following findings of fact: appellant was sufficiently warned of his *Miranda* rights; he voluntarily, knowingly and intelligently waived these rights before confessing; he was not under the influence of any drugs or other intoxicants at the time of giving the confession, and he did not request an attorney. Absent a clear abuse of discretion, such findings by the trial court will be upheld. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Cannon v. State*, 691 S.W.2d 664 (Tex.Cr.App.1985) cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

■ Appellant first contends that his Sixth Amendment right to counsel was violated by the admission of his confession into evidence. However, at the time appellant signed his confession he was merely under arrest and being questioned. The

Sixth Amendment right to the assistance of counsel is not invoked until formal adversary judicial proceedings have been initiated. *United States v. Gouveia,* 467 U.S. 180, 187–189, 104 S.Ct. 2292, 2296–2298, 81 L.Ed.2d 146 (1984); *Brewer v. Williams,* 430 U.S. 387, 398–399, 97 S.Ct. 1232, 1239–1240, 51 L.Ed.2d 424 (1977); *Kirby v. Illinois,* 406 U.S. 682, 688–689, 92 S.Ct. 1877, 1881–1882, 32 L.Ed.2d 411 (1972); *Dunn v. State,* 696 S.W.2d 561, 565 (Tex.Cr.App. 1985) cert. denied, 475 U.S. 1089, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986). The mere arrest and subsequent questioning of a person does not constitute sufficient formalization of proceedings to trigger the Sixth Amendment requirement of counsel. Appellant's Sixth Amendment contention is overruled.

Appellant secondly challenges the admissibility of his confession on the ground that because of intoxication, he lacked the capacity to knowingly and voluntarily waive his *Miranda* rights. Appellant bases this contention on the fact that he consumed preludin, marihuana and beer six to seven hours prior to confessing. Whether appellant was even under the influence of these drugs at the time he gave his confession is disputed. The trial court made a finding of fact that appellant was not, and we find nothing in the record to indicate that this finding was an abuse of discretion.

■ Even if appellant was under the influence of intoxicants at the time of confessing, this would not automatically render the confession involuntary. Intoxication, while relevant, is not per se determinative of the voluntariness of a confession. *United States v. Brown,* 535 F.2d 424, 427 (8th Cir.1976); *Vasquez v. State,* 163 Tex. Cr.R. 16, 288 S.W.2d 100, 109 (1956). The central question is the extent to which appellant was deprived of his faculties due to the intoxication. *Vasquez, supra* at 109; *Dickey v. State,* 284 S.W.2d 901 (Tex.Cr. App.1955); *Halloway v. State,* 162 Tex.Cr. R. 322, 175 S.W.2d 258, 259 (1943). If appellant's intoxication rendered him incapable to make an independent, informed choice of free will, then his confession was

given involuntarily. *Jurek v. Estelle,* 623 F.2d 929, 937 (5th Cir.1980).

■ All the witnesses at the suppression hearing testified that appellant was coherent and in control of all his faculties. His speech was not slurred and three experienced police officers testified that appellant did not show any signs of intoxication. A toxicologist testified that, given the amount of drugs appellant testified that he consumed, the time span involved and the offset effect of the depressants and stimulants, appellant would have been rational at the time he confessed.

Appellant himself testified that he knew what he was doing but that he would not have been so easily "persuaded" into giving a confession had he not taken the drugs. He admitted that he was not physically abused or threatened in any manner. Appellant also testified that he was currently on probation for robbery and that as a result of that arrest, he was aware of his constitutional rights. He remembered that his *Miranda* warnings were given to him numerous times and that he had read and signed his confession. There is no evidence that appellant's will was in any way overborne.

■ Appellant adds the assertion that his age and intellect contributed to his inability to intelligently waive his *Miranda* rights. We find no support for this contention in the record. Appellant testified that he was nineteen years old at the time of confessing and fully able to read and write the English language. There was no evidence that he had an inferior intellect and his prior experiences with the criminal justice system is a fact in favor of voluntary waiver. *Lovell v. State,* 525 S.W.2d 511, 513–514 (Tex.Cr.App.1975).

The evidence clearly supports the trial court's finding that appellant knowingly, voluntarily and intelligently waived his rights and gave a confession without being under the influence of intoxicants. In fact, the instant evidence of appellant's possible intoxication does not compare to the evidence adduced in other cases where intoxication rendered the confessions involuntary. *See and compare, Townsend v.*

*Sain,* 372 U.S. 293, 304–309, 83 S.Ct. 745, 752–755, 9 L.Ed.2d 770 (1963) (statement involuntary where defendant was 19 year old drug addict going through withdrawal and was given "truth serum"); *Mincey v. Arizona,* 437 U.S. 385, 398–402, 98 S.Ct. 2408, 2416–2419, 57 L.Ed.2d 290 (1978) (confession rendered involuntary when given while injured in hospital almost to point of coma); *People v. Fordyce,* 200 Colo. 153, 612 P.2d 1131, 1134 (1980) (confession made while in intensive care and after ingestion of morphine to the point of saturation held involuntary); *DeConingh v. State,* 433 So. 2d 501 (Fla.1983) cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984) (confession rendered involuntary where given while on thorazine and valium and while out of touch with reality).

Moreover, the instant evidence of intoxication falls far below the evidence adduced in cases where intoxication was held to be insufficient to render the confession involuntary. *See and compare, United States v. Sledge,* 546 F.2d 1120 (4th Cir.1977) cert. denied, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977) (defendant's claim that he was "high" due to an intravenous injection of heroin and preludin two and one-half hours before confessing rejected in view of police testimony that he was coherent); *United States v. Wilkins,* 659 F.2d 769, 775 (7th Cir.1981) (fact that defendant was under influence of injected drugs at time of questioning overridden by nurse's testimony that defendant appeared coherent); *United States v. Faul,* 748 F.2d 1204, 1220 (8th Cir.1984) (statements made three days after extensive surgery voluntary where defendant was advised of *Miranda* rights and appeared coherent); *Mallott v. State,* 608 P.2d 737, 743 (Alas.1980) (blood alcohol level of .31 which would render 90% of population unable to function did not render confession involuntary); *Atkins v. State,* 452 So.2d 529, 531–532 (Fla.1984) (confession voluntary when given after approximately six hours had passed between ingestion of Quaalude and beer and the giving of the confession); *Holcomb v. State,* 254 Ga. 124, 326 S.E.2d 760, 762 (1985) (where defendant was sufficiently warned but was suffering withdrawal symptoms from amphetamines and cocaine, confession was voluntary); *State v. Lamb,* 213 Neb. 498, 330 N.W.2d 462, 467 (1983) (blood alcohol level of .224 not render confession involuntary where defendant was coherent); *King v. State,* 585 S.W.2d 720 (Tex.Cr.App.1979) (heroin taken on the day of confessing did not render confession involuntary); *Boggs v. Commonwealth,* 229 Va. 501, 331 S.E.2d 407, 415 (1985) cert. denied, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 347 (1986) reh. denied, 475 U.S. 1133, 106 S.Ct. 1666, 90 L.Ed.2d 207 (confession voluntary with evidence of alertness and comprehension where defendant consumed a six pack of beer, and a fifth of whiskey, smoked marihuana, and took two hits of speed). For a thorough compilation of applicable caselaw *see,* 25 A.L.R. 4th 419. Appellant's capacity argument is overruled.

In his final contention under his eighth point of error, appellant asserts a violation of his Fifth Amendment request for counsel. Appellant claims that he requested an attorney two times prior to confessing and both requests were denied. The trial court found that appellant did not invoke his right to counsel and again, we find nothing in the record to indicate that this was an abuse of discretion.

As is often the case, this argument comes down to a swearing match between appellant and the arresting officers. The trial court, who is the exclusive judge of the credibility of the witnesses and the weight to be given the testimony at the suppression hearing, believed the testimony of the officers. *Hawkins v. State,* 613 S.W.2d 720, 731–732 (Tex.Cr.App.1981) cert. denied, 454 U.S. 919, 102 S.Ct. 422, 70 L.Ed.2d 231 (1981) reh. denied, 454 U.S. 1093, 102 S.Ct. 660, 70 L.Ed.2d 632. Officers Anderson and Dollins were with appellant from the time of his arrest through the time he gave his confession. Both testified that appellant never requested an attorney.

Appellant testified that he first requested counsel while he was being arrested by Officer Anderson. Appellant stated that, as Officer Anderson was handcuffing and searching him, he told Tyrone

Williams to call his attorney. Such an indirect request for counsel, to a third party, even if true, would not be sufficient to invoke appellant's right to counsel. *See, Russell v. State,* 727 S.W.2d 573 (Tex.Cr. App.1987) (defendant's question to interrogating officer of whether presence of counsel was necessary not invoke right to counsel); *Collins v. State,* 727 S.W.2d 565 (Tex. Cr.App.1987) (defendant's question of whether he would get an attorney upon arrival in Houston not invoke right to attorney); *Kelly v. State,* 621 S.W.2d 176, 178 (Tex.Cr.App.1981) (defendant's request for mother to get him an attorney in presence of officer who heard such request not invoke right to counsel); *Cannon v. State,* 691 S.W.2d 664, 673 (Tex.Cr.App.1985) (defendant's request for bartender to call his attorney not sufficient to invoke right); *Curtis v. State,* 640 S.W.2d 615, 618 (Tex. Cr.App.1982) (defendant's asking brother to get his attorney and later question to interrogating officer of how he would be provided a court-appointed attorney did not invoke right to counsel).

Appellant further testified that his second request for counsel was made to Officer Anderson at the police station just prior to confessing. Officer Anderson and Dollins denied that such a request was made. The trial court, who is in the best position to hear the testimony and see the demeanor of the witnesses found the testimony of the officers more believable. This the trial court is free to do, *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr.App.1978) cert. denied, 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1979), reh. denied, 439 U.S. 998, and we find that the evidence supports the trial court's conclusions.

After a careful review of the totality of the record, we find that appellant voluntarily chose to waive his constitutional rights and confess. The confession was properly admitted. Appellant's eighth point of error is overruled.

In his first point of error (third point of error in the Lane brief) appellant contends that the trial court erred by excusing prospective juror Terry Hurzeler on its own motion where such juror was not subject to absolute disqualification. We agree that the court erred but, after a careful review of the record, find such error to be harmless.

During the voir dire examination of Hurzeler, the following discussion took place:

[THE COURT]: As each juror in this case is selected, I swear the juror and excuse them then to go about their personal affairs and business affairs until Monday, February the 15, at which time they're all instructed to return to the 178th District Court to begin hearing evidence in the case.

I advise you all of this so that I may ask you whether there is anything about the condition of your personal health, the health of any immediate members of your family or about your other affairs in any way that would cause you such grave concern if you were selected as a juror that you would not be able to discharge your functions as a juror and give this matter your full and undivided attention?

A: I think that's a possibility. I'm one of two men in a two man office here in Houston which is very busy at present. I'm also planning to be married on February the 14th.

Q. You have your wedding scheduled at that time?

A. Yes, I do.

Q. I would imagine you would be rather preoccupied and find it difficult to give this matter your attention immediately thereafter. So I would excuse you. I think that's certainly in the court's discretion an adequate reason for me to excuse you from this obligation at this time. Maybe next time you'll be in a position to serve, sir. Thank you.

MR. SCOTT [Defense counsel]: Note our exception, Your Honor, with the additional fact that we really aren't set to start until the 15th, Judge.

■ Contrary to the State's contention that counsel's objection "[n]ote our exception", was too general to preserve any error, we find that, given the context, the court was sufficiently apprised of appellant's objection to the court's sua sponte

excusal of prospective juror Hurzeler. *See, Carter v. State,* 717 S.W.2d 60, 76 (Tex.Cr. App.1986). While such objection is not a model of specificity, error, if any, is preserved. *Zillender v. State,* 557 S.W.2d 515 (Tex.Cr.App.1977).

■ It is axiomatic that a trial judge should never sua sponte excuse a prospective juror unless the juror is absolutely disqualified from serving on a jury. *See,* Articles 35.16 and 35.19, V.A.C.C.P.; *Rougeau v. State,* 738 S.W.2d 651, 661 (Tex.Cr. App.1987); *Goodman v. State,* 701 S.W.2d 850, 856 (Tex.Cr.App.1985) and cases cited therein. If the court does so, however, reversible error will arise only upon a showing of harm. The applicable harm analysis is different, dependent upon whether the excluded juror is qualified or disqualified for service.

■ Where the trial court erroneously excludes a *qualified* juror, harm is shown by the fact that the State exhausted its peremptory challenges, and that but for the court's actions, the juror would have served. *Bell v. State,* 724 S.W.2d 780, 795–796 (Tex.Cr.App.1986); *Goodman, supra* at 856. However, when the court sua sponte excludes a *disqualified* juror, i.e. a juror who is properly subject to a challenge for cause, harm is shown only when the defendant establishes that he was tried by a jury to which he had a legitimate objection. *Bell, supra* at 795; *Goodman, supra* at 856; *Esquivel v. State,* 595 S.W.2d 516, 524 (Tex.Cr.App.1980) cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *Bodde v. State,* 568 S.W.2d 344, 349 (Tex.Cr.App.1978) cert. denied, 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979) reh. denied, 441 U.S. 957, 99 S.Ct. 2189, 60 L.Ed.2d 1062; *Valore v. State,* 545 S.W.2d 477, 481 (Tex.Cr.App.1977); *Henriksen v. State,* 500 S.W.2d 491, 493–494 (Tex.Cr. App.1973).

■ In the instant case, the trial court erroneously excluded prospective juror Hurzeler on its own motion because the juror was so preoccupied by his wedding and work that he was incapable or unfit to serve. Such an exclusion does not constitute an absolute disqualification under Article 35.19, V.A.C.C.P., nor does it fit within the available grounds for a challenge for cause listed in Article 35.16, V.A.C.C.P. However, a challenge for cause can properly be asserted on grounds which are not specifically enumerated in Article 35.16, V.A.C.C.P., where such a challenge is based on facts that show that the prospective juror would be "incapable or unfit to serve on the jury." Art. 35.16(a), V.A.C.C.P.; *Moore v. State,* 542 S.W.2d 664, 669 (Tex.Cr.App.1976) cert. denied, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977). *See,* 23 Tex.Jur.3d., Sec. 2691, p. 339. In *Moore* we stated,

> Article 35.16(A), supra, provides that, "(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury...." The statute is divided into three parts, providing challenges for cause which both the State and the defense may make, those which the State may make and those which the defense may make. We find nothing in the statute which renders these lists an exclusive basis for challenges for cause. Challenges for cause not based on any ground mentioned in the statutes are ordinarily addressed to the sound discretion of the trial judge. [citations omitted].

*Moore, supra* at 669.

■ There is evidence in the record to support the trial court's determination that prospective juror Hurzeler was properly subject to such a non-enumerated challenge for cause.[4] The trial judge, in his discre-

---

4. However, we are quick to note that although there is evidence in the record to support the trial judge's determination that this juror was unfit to serve, a more careful judge would have further developed the testimony. Rather than summarize the juror's views in conclusory fashion, the judge should have provided the State and defense ample opportunity to question the juror as to the extent of his personal plans and their effect upon his capability to serve. Although the ultimate decision rests in the trial court's discretion and will not be disturbed absent an abuse, there must be some evidence in the record to support the court's determination. The very terse colloquy between the judge and prospective juror Hurzeler in the instant case is

tion, determined that Hurzeler was so pre-occupied with personal problems that he was unfit to serve. Article 35.16(a), V.A.C.C.P.; *Moore, supra. See,* 23 Tex.Jur.3d, Sec. 2693, p. 340. Because Hurzeler was properly subject to a challenge for cause, he becomes a "disqualified" juror. *Goodman, supra* at 856. Thus, we are presented with the improper sua sponte exclusion of a disqualified juror. Such error is reversible only where appellant establishes that he was tried by a jury to which he had a legitimate objection. *Esquivel, supra; Henriksen, supra.* To exhibit a legitimate objection to the jury, appellant would have to make some showing that he was either forced to exercise a peremptory strike in order to prevent a disqualified juror from sitting or that he was forced to accept an objectionable juror in the prospective juror's place. *See, Bell, supra* at 796. Appellant has made no such showing.

Although the trial court erred in excusing prospective juror Hurzeler on its own motion, such error is not reversible. Appellant's first point of error is overruled.

In points of error four through six of Mr. Lane's brief, appellant asserts the same challenge to the court's sua sponte excusal of four other jurors. However, as appellant concedes, he made no objection to the excusal of these prospective jurors. Error, if any, is waived. *Rougeau, supra* at 661; *Holloway v. State,* 691 S.W.2d 608, 611 (Tex.Cr.App.1984); *Johnson v. State,* 629 S.W.2d 731, 735–736 (Tex.Cr.App.1981). Appellant's fourth through sixth points of error, contained in counsel Lane's brief, are overruled.

Appellant, in his third point of error, contends that the trial court erroneously granted the State's challenge for cause to prospective juror Virginia Lewis in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The State challenged Lewis because of her views against the death penalty. The applicable standard is whether the juror's views on capital punishment would "prevent or substantially impair" her perform-

ance in accordance with her instructions and oath. *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Castillo v. State,* 739 S.W.2d 280, 295–296 (Tex.Cr. App.1987). The trial court determined that Lewis' views on capital punishment were such that they would have prevented or substantially impaired her dutiful performance. Based upon the totality of the voir dire, we agree and find that the excusal did not constitute an abuse of discretion.

The tenor of the voir dire examination of prospective juror Lewis, concerning her feelings about the death penalty, is best characterized by her initial and most repeated response: "I don't know. I've never thought about it before." It was clear throughout that she was struggling to give honest answers to difficult questions which she had never considered. During the initial two-thirds of her testimony, Lewis vacillated in her position on capital punishment. She initially stated that she would have conscientious objections to the death penalty, but later stated that she could return affirmative answers which would result in a death sentence. She constantly equivocated concerning her ability to vote to impose the death penalty, and her answers were often concluded with caveats such as, "I don't know what I would do. So I don't think it would be fair for me to say one thing and then get on the jury and change my mind." After being informed by the trial court numerous times that she would have to give a definitive yes or no answer, Lewis responded to defense counsel's questions as follows:

> [DEFENSE COUNSEL]: Now, in a proper case of believing beyond a reasonable doubt that any or all of those questions [5] could be answered yes, could you answer them yes?
>
> [JUROR LEWIS]: No.
>
> [THE COURT]: What was your answer?
>
> [JUROR LEWIS]: No.

not a model of an effective method in which to develop such testimony.

5. "[T]hose questions" being the special issues of Art. 37.071, V.A.C.C.P.

[DEFENSE COUNSEL]: So there are no set of circumstances or facts that could be proved to you that you could ever under any circumstances, no matter how bad a case was or no matter how many people were killed, that could make you answer these questions yes?

[JUROR LEWIS]: I would have to say no because I don't know what I would do.

Then, as questioning continued, Lewis once again vacillated in her responses from not being able to answer the special issues "yes" under any facts to being able to answer them "yes" if she was "convinced." Finally, after fifty pages of questioning, the trial court took over the examination and the following testimony was given:

[THE COURT]: Do you feel there is evidence that would justify you answering that question[6] yes?

[JUROR LEWIS]: Well, being I don't know, I'll have to say no, because I don't know.

[THE COURT]: You do not feel there could be evidence that would justify you and render it proper for you to answer that second question yes?

[JUROR LEWIS]: I don't know.

[THE COURT]: Well, I'll have to ask you to take a position one way or the other so that the Supreme Court will know what your position is.

[JUROR LEWIS]: All right, then no.

[THE COURT]: You could not—there is no evidence?

[JUROR LEWIS]: Okay, then I could not be convinced that someone would be a continuing threat to society.

. . . .

[THE COURT]: Do you feel there is any evidence that could be presented to you which to your mind could render it proper for you to answer the second issue which would read, do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

[JUROR LEWIS]: No.

[THE COURT]: And that would be your position in all cases?

[JUROR LEWIS]: Yes.

[THE COURT]: Irregardless [sic] of the evidence in the case?

[JUROR LEWIS]: Yes.

[PROSECUTOR]: The State will renew its challenge, Your Honor.

[THE COURT]: Well, in light of her answers, the Court is going to sustain the challenge. I've done the best I can.

■ Prospective juror Lewis was a quintessential "vacillating" and "equivocating" juror. Where presented with such a juror, elements such as demeanor, expression, emphasis and tone of voice, all of which escape the purview of a cold record, are important factors in assessing the message conveyed. Because of this fact, great deference is accorded to the trial court who is in the best position to view the juror and calibrate the strength of her views. *Livingston v. State*, 739 S.W.2d 311, 322–324 (Tex.Cr.App.1987); *Franklin v. State*, 693 S.W.2d 420, 424 (Tex.Cr.App.1985) cert. denied, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986); *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1981) cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App.1976) cert. denied, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977).

In the seminal opinion of *Wainwright v. Witt*, Justice Rehnquist stated,

[D]eterminations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. [footnote omitted] Despite this lack of clarity in the printed record, however, there will

6. "[T]hat question" being special issue number two of Art. 37.071(b)(2), V.A.C.C.P.

be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law ... this is why deference must be paid to the trial judge who sees and hears the juror. *Wainwright, supra* 469 U.S. at 424–427, 105 S.Ct. at 852–853.

As an example of such a situation, Rehnquist points to the voir dire examination of venireman Pfeffer from *O'Bryan v. Estelle,* 714 F.2d 365 (5th Cir.1983) cert. denied, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). *Wainwright, supra* at 425, 105 S.Ct. at 852–853. The voir dire of Pfeffer is strikingly similar to the voir dire of Lewis in the instant case. Both are characterized by repeated "I don't know" responses and terminate with the jurors, upon being pressed by the trial court to give a definite yes or no answer, responding that they could not follow the law. *O'Bryan, supra* at 379. Pfeffer was held correctly challengeable for cause, as now is Lewis.[7]

■ The record supports the trial court's conclusion that Lewis was unfit to serve on the jury. Her extreme emotional insecurity concerning the death penalty, which manifested itself in her continual equivocating responses, could have been sufficient to substantially impair her performance. Moreover, Lewis' unequivocal, final statement that because of her views she would never affirmatively answer special issue number two was sufficient to justify her exclusion. *Miller v. State,* 741 S.W.2d 382, 386–387 (Tex.Cr.App.1987); *Briddle v. State,* 742 S.W.2d 379, 384–385 (Tex.Cr.App.1987); *Knox v. State,* 744 S.W.2d 53, 55–59 (1987); *Livingston, supra.* Her prior vacillating statements as to

whether she could assess the death penalty, and her continual uncertainty, caveats and qualifications do not undercut the validity of her solidified final stance.[8] *Griffin v. State,* 665 S.W.2d 762 (Tex.Cr.App. 1983) cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984).

We find ample support in the record for the trial court's determination that Lewis' views would have prevented or substantially impaired the performance of her duties as a juror. Appellant's third point of error is overruled.

■ In his second point of error, appellant contends that the trial court erroneously sustained the State's challenge for cause to prospective juror Joseph Lewis. The State challenged Lewis because of his inability to assess guilt in a case prosecuted under the law of parties. The trial court sustained the State's challenge based on Lewis' inability to follow the law, and we find ample support in the record for the trial court's action.

During voir dire, Lewis repeatedly stated that he could not follow the law of parties and find a non-triggerman guilty of capital murder, regardless of the evidence which might be adduced at trial.

Lewis answered the questions as follows:

[THE STATE]: Do you feel that you could not follow this rule of parties and find someone guilty of capital murder and then assess a death penalty where they are a non-triggerman? Is that what you're telling us?

[JUROR LEWIS]: Yes, sir.

[THE STATE]: And that would be your decision in all cases?

[JUROR LEWIS]: Yes, sir, it would be, a non-triggerman, yes sir.

---

7. It is interesting to note that this same result was reached in the direct appeal of *O'Bryan* to our Court, *see O'Bryan v. State,* 591 S.W.2d 464, 471–472 (Tex.Cr.App.1979) cert. denied, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980), even though the applicable standard at that time was the more stringent standard of *Witherspoon v. Illinois, supra.*

8. We note, however, that the validity attributed to the final response is not due to the simple fact that this was the juror's last statement, but

because it was the consistent position she took when forced to definitively answer. The trial court was in the best position to determine her sincerity and resolve and, at that point, became satisfied that her stance was sufficiently confident to terminate further questioning and grant the State's challenge. Additionally, defense counsel must have been somewhat satisfied with the confidence of Lewis' final answers since he uncharacteristically did not request further questioning.

The only exception to Lewis' consistent opinion came while the trial court was attempting to explain the bifurcated trial procedure and the law of parties. Lewis became confused and began answering questions based upon the assumption that a "bifurcated" trial meant that he would be sitting on two trials—one for each party to the offense. His misunderstanding became clear later in the voir dire when the following transpired:

[JUROR LEWIS]: Okay, what you're saying, is that we have reached a verdict of guilty and whatever the penalty may be, but then in the second segment of the trial, we're speaking of the person that did not pull the trigger? Am I understanding this correctly?

THE COURT: Yes, sir.

[JUROR LEWIS]: And then we would have to render a verdict on that particular person.

THE COURT: That's right.

[JUROR LEWIS]: That did not pull the trigger?

THE COURT: That's right.

[JUROR LEWIS]: Is that what you're saying?

THE COURT: That's right.

[JUROR LEWIS]: All right, sir, then my decision of being guilty on the person that pulled the trigger would stand. Is that correct?

THE COURT: Sir?

[JUROR LEWIS]: I said on the first segment of a trial and they brought in a verdict and the law stipulates that they're equally guilty, regardless of what the crime was, in whatever the case may be.

THE COURT: That is the law if you find these things [9] that I went over with you are proven beyond a reasonable doubt, yes.

[JUROR LEWIS]: All right, sir. But then you're saying in the second trial we would be trying the man that was with him but did not pull the trigger.

Amid this confusion, Lewis stated that he could find both participants guilty of capital murder. However, immediately thereafter the State further explained the law of parties and the fact that solely the non-triggerman would be on trial, offering a factual example for clarification, and then asked Lewis if he could ever find the non-triggerman guilty of capital murder. Lewis responded, "[t]his is what's really confusing to me. The way it was explained and then the way that you're explaining it now, I don't feel that in all consciousness that I could." From this point forward, Lewis consistently stated that he could not find guilt in any case where the defendant did not pull the trigger.

As stated earlier, the applicable standard is whether the juror's views would "prevent or substantially impair" his performance. *Wainwright, supra.* The State challenged Lewis because of his inability to follow the law of parties. Article 35.-16(b)(3), V.A.C.C.P., authorizes the State to challenge for cause any prospective juror who has a bias or prejudice against "any phase of the law upon which the State is entitled to rely for conviction or punishment." Although Lewis vacillated somewhat in his position, possibly due to his confusion over the bifurcated trial procedure, he clearly stated at the outset and end of voir dire that he could not follow the law of parties. The trial court, who was in the best position to assess the juror's views, impliedly found that Lewis' beliefs concerning non-trigger defendants constitutes a bias against the law sufficient to substantially impair his performance. We find that the record supports the trial court's determination. *Phillips v. State,* 701 S.W.2d 875, 883–884 (Tex.Cr.App.1985) cert. denied, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986); *Selvage v. State,* 680 S.W.2d 17, 23 (Tex.Cr.App.1984); *Session v. State,* 676 S.W.2d 364 (Tex.Cr.App. 1984) cert. denied, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 169 (1985).

Contrary to appellant's contention, *Durrough v. State,* 620 S.W.2d 134, 140–142

---

9. "[T]hese things" being the findings required under the law of parties. *See,* V.T.C.A., Penal Code Sec. 7.02.

(Tex.Cr.App.1981), is wholly inapplicable to the instant juror. *Durrough* involved an improperly granted challenge to a juror who stated that, although she had conscientious scruples against the death penalty, she could follow the applicable law. *Durrough, supra;* The instant challenge was based upon an Article 35.16 inability of the juror to follow the law of parties. We accord due deference to the trial court's conclusion that such an inability existed and would obviate the juror's ability to serve on the jury. Appellant's second point of error is overruled.

 In his fourth point of error, appellant contends that the trial court incorrectly denied his challenge for cause to prospective juror A.K. Richardson. Appellant exercised a peremptory challenge on this juror. Where a trial court erroneously overrules a defendant's challenge for cause, the defendant must show that he exhausted all of his peremptory challenges before harm can be established. Appellant has made no attempt to make such a showing. The record reflects that he had one peremptory challenge remaining.[10] Error, if any, is harmless. *Demouchette v. State,* 731 S.W.2d 75, 83 (Tex.Cr.App.1986); *East v. State,* 702 S.W.2d 606, 611 (Tex.Cr.App. 1985) cert. denied, 474 U.S. 1000 (1985); *White v. State,* 629 S.W.2d 701, 707 (Tex. Cr.App.1981) cert. denied, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1981). Appellant's fourth point of error is overruled.

In his tenth point of error appellant contends that the process of excluding veniremembers who are opposed to the death penalty violates the fair cross-section requirement of the Sixth Amendment. In *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), this exact issue was presented to the U.S. Supreme Court and decided adversely to appellant. In *Marquez v. State,* 725 S.W.2d 217, 241– 243 (Tex.Cr.App.1987) cert. denied, — U.S. ——, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987), this Court adopted the *Lockhart* analysis as equally applicable to the Texas Constitu-

tion. Appellant's tenth point of error is overruled.

In his eleventh point of error (first point of error in counsel Lane's brief), appellant contends that the trial court fundamentally erred by failing to charge the jury at punishment that they could not rely on the law of parties in answering the special issues in violation of *Green v. State,* 682 S.W.2d 271 (Tex.Cr.App.1984) cert. denied, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Appellant concedes, however, that he failed to request or object to the absence of such a charge. The failure to object to the charge waives all but fundamental error. Art. 36.19, V.A.C.C.P.; *Duffy v. State,* 567 S.W.2d 197, 204 (Tex.Cr.App.1978) cert. denied, 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978). The error, to constitute fundamental proportion, must be egregious and create such harm that it deprives appellant a fair and impartial trial. Art. 36.19, *supra; Almanza v. State,* 686 S.W.2d 157, 171–172 (Tex.Cr.App.1985). After a careful review of the totality of the record, we find no such error or harm.

 First, the failure of the trial court to sua sponte charge the jury that the law of parties may not be applied to the special issues does not constitute fundamental error. In *Green v. State, supra,* this Court reversed prior caselaw to follow the 8th Amendment requirements announced ·by the U.S. Supreme Court in *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The *Enmund* Court held that there must be some proof that the defendant either killed, attempted or intended to kill or contemplated a killing before a death sentence could be imposed. *Enmund, supra.* In *Green,* we determined that application of *Enmund* required that the law of parties could not be applied to the punishment issues in a capital murder case. *Green, supra* at 287. In dicta we further noted:

> *Upon request* by a capital murder defendant or the State, the jury is to be instructed at the punishment phase that only the conduct of the defendant can be

---

**10.** We note that the record contains a defense motion for additional peremptories, but this motion, dated July 9, 1981, was from appellant's first trial.

considered at the punishment phase, and that the instructions pertaining to the law of parties at the guilt stage cannot be considered. Appellant did not request any such charge in this case.[11] *Green, supra* at 287, n. 4. Appellant seizes upon this language from *Green* to argue that it was fundamental error for the court to omit an "anti-parties" charge at punishment. However, such a charge is not required by *Green, supra,* or *Enmund, supra,* nor is it mandated by any Texas statute. *See, Stewart v. State,* 686 S.W.2d 118, 124 (Tex.Cr.App.1984) cert. denied, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985). While it is abundantly clear that an "anti-parties" charge would be acceptable and, in fact, applauded by this Court, *see,* 8 McCormick and Blackwell, Texas Criminal Forms and Trial Manual, Sec. 81.15, p. 289 (9th Ed.1985) and 3 Texas Criminal Practice Guide, Sec. 75.103, p. 75–58.1, the failure to give such a charge, absent a request or objection, does not constitute fundamental error.

■ Further, we find that appellant was not egregiously harmed by the lack of such a charge. Although the jury was charged on the law of parties at the guilt stage, it cannot be presumed that they considered the same during punishment. To the contrary, the careful trial court, while not having the benefit of the *Green* decision at the time of trial,[12] voir dired the jury on the fact that the law of parties, while applicable at guilt, was not applicable to the punishment special issues. Moreover, the special issues themselves incorporate the *Enmund–Green* requirements by directly focusing upon solely the defendant's culpability. *See, Cuevas v. State,* 742 S.W.2d 331, 343 (Tex.Cr.App.1987); *Bux-*

*ton v. State,* 699 S.W.2d 212, 214–215 (Tex. Cr.App.1985) cert. denied, 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986); *Meanes v. State,* 668 S.W.2d 366, 375–378 (Tex.Cr.App.1983) cert. denied, 466 U.S. 945 (1984); *Green, supra* at 287. The evidence adduced in the instant case, concerning appellant's conduct, substantially supports the jurys' affirmative answers to the special issues.[13] Because appellant's conduct alone was sufficient to sustain the affirmative answers, we cannot find that he suffered egregious harm from the lack of an "anti-parties" charge at punishment.

■ While a prophylactic "anti-parties" instruction should be given at punishment, upon request, the absence of such an instruction in the instant case did not constitute egregious error or harm. *See, Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986); *Skillern v. Estelle,* 720 F.2d 839 (5th Cir.1983); *Rector v. State,* 738 S.W.2d 235, 241 (Tex.Cr.App.1986); *Marquez v. State,* 725 S.W.2d 217, 225 (Tex.Cr.App. 1987) cert. denied, —— U.S. ——, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). Appellant's eleventh point of error (first point of error in the Lane brief) is overruled.

■ In appellant's twelfth through twentieth points of error he alleges improper jury argument at both the guilt-innocence and punishment phases of trial.[14] Appellant concedes, however, that, with the exception of one, there was no trial objection to any of the challenged arguments. Generally, jury argument error is waived by the defendant's failure to object or request an instruction to disregard. *Briddle v. State,* 742 S.W.2d 379, 390 (Tex.Cr.App.

---

**11.** Author's emphasis unless otherwise noted.

**12.** We note that appellant's trial took place in 1982, two years prior to our decision in *Green, supra.*

**13.** See our discussion of appellant's fifth, sixth and seventh points of error, post, wherein we address the sufficiency of the evidence to support the three special issues.

**14.** Appellant, after "recognizing", in a footnote, this Court's prohibition against multifarious points of error, Tex.R.App.Proc., R. 74(d), pro-

ceeds to assert numerous multifarious points concerning jury argument error. Regardless of appellant's disclaimer that he grouped different points to expedite review, we find it to be much more expedient to follow the rules. In the interest of justice, and due to the finality of the punishment, the points were reviewed, Tex.R. App.Pro., R. 74(p), however, we warn against future violations. *See, Woodard v. State,* 696 S.W.2d 622, 625 (Tex.App.—Dallas 1985, no pet.).

1987); *Romo v. State*, 631 S.W.2d 504 (Tex. Cr.App.1982); *Esquivel v. State*, 595 S.W. 2d 516, 522 (Tex.Cr.App.1980) cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). *Also see,* Tex.R.App.Proc., R. 52(a); 23 Tex.Jur.3d, sec. 2928, pp. 743–744 and sec. 2931, pp. 749–750. This rule is founded on the appellate presumption that an instruction to disregard will be obeyed by the jury, thus curing any possible error. *See, Waldo v. State*, 746 S.W.2d 750, 753 –54 (Tex.Cr.App.1988); *Gardner v. State*, 730 S.W.2d 675, 696 (1987) cert. denied, —— U.S. ——, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). *Also see,* 23 Tex.Jur.3d, sec. 2932, 751–756. However, an exception arises where the argument is so prejudicial that an instruction to disregard would not have cured harm. *Romo, supra; Smith v. State*, 541 S.W.2d 831 (Tex.Cr.App.1976) cert. denied, 430 U.S. 937, 97 S.Ct. 1565, 51 L.Ed.2d 783 (1977). *See, e.g., Montoya v. State*, 744 S.W.2d 15, 37 (Tex.Cr.App.1987, Opinion on appellant's Motion for Rehearing); *Waldo, supra; Lewis v. State*, 529 S.W.2d 533 (Tex.Cr.App.1975). Unless the prosecutor's argument was so prejudicial that an instruction to disregard could not have removed its ill effects from the mind of jury, reversal will not result. Appellant does not allege, and, after a careful review of the record, we do not find that any of the challenged arguments had such an irrevocable effect.[15] Consequently, error, if any, is deemed waived. Appellant's

twelfth through nineteenth points of error are overruled.

■ In his twentieth point of error, appellant raises the only point challenging an objected to jury argument. However, the trial objection was that the argument was "not a correct statement of the evidence." The judge admonished the jury to rely on their own recollection of the evidence before overruling the objection. On appeal, appellant contends that the argument was a comment on his failure to call punishment witnesses. Because the challenge on appeal does not comport with the objection at trial, nothing is presented for review. *Sharp v. State*, 707 S.W.2d 611 (Tex.Cr. App.1986); *Guzmon v. State*, 697 S.W.2d 404, 411 (Tex.Cr.App.1985) cert. denied, 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d 734 (1986); *Miller v. State*, 566 S.W.2d 614, 619–620 (Tex.Cr.App.1978). Further, any possible error raised by the trial objection was cured by the court's admonishment. Appellant's twentieth point of error is overruled.

■ In his fifth, sixth and seventh points of error, appellant challenges the sufficiency of the evidence to support the jury's affirmative findings to the three special issues of Art. 37.071(b), V.A.C.C.P., submitted at punishment. Our review of the evidence must be in the light most favorable to the verdict to determine whether a rational trier of fact could have found the elements of each of the special issues to have been proven beyond a rea-

---

15. Appellant, acknowledging the general rule that failure to object waives error, goes on to argue that the cumulative effect of all of the unobjected to arguments constitutes fundamental harm. We find this argument untenable. *See, McIlveen v. State*, 559 S.W.2d 815, 823 (Tex. Cr.App.1977). Not only did the contested arguments not, in and of themselves, cause egregious harm, but the majority of the arguments were, in fact, proper. *See, Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973). For example, the argument challenged in appellant's twelfth point of error, concerning the prosecutor's assessment of appellant's intent or expectation of harm, is not a comment on appellant's failure to testify, but a reasonable deduction from the evidence showing that appellant planned the robbery, entered the store with a loaded gun, pointed and fired at close range. *See, Rogers v. State*, 598 S.W.2d 258, 263–264

(Tex.Cr.App.1980). Likewise, the thirteenth point attacks the prosecutor's reference to a plea bargain given to an accomplice witness as an argument outside the record when, in fact, this argument was an invited response based on facts fully in the record, as introduced by appellant, and initially argued by appellant. Further, the argument challenged in the fourteenth point is not an improper plea for conformance to community expectations, but a proper "you" and "they" textbook plea for law enforcement. *Haynes v. State*, 627 S.W.2d 710, 714 (Tex.Cr. App.1982). *See,* 23 Tex.Jur.3d, sec. 2910, p. 715– 718. Finally, in appellant's eighteenth point, the argument that appellant would kill to escape from jail is not an argument outside the record, but a reasonable deduction supported by the evidence that appellant attempted an armed escape while pending trial.

sonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Combs v. State*, 643 S.W.2d 709 (Tex.Cr.App.1982). Although appellant was convicted under a parties theory, it is now well-settled that the law of parties may not be applied to the special issues at the punishment phase. *Enmund, supra; Green, supra.* Thus, our review will encompass and assess appellant's conduct alone.

The jury was not charged on the law of parties or given an "anti-parties" charge at the punishment phase. They were instead given the special issues of Art. 37.071(b), each focusing entirely and exclusively on appellant's conduct, and instructed that before returning affirmative findings, they must find that the evidence supports each issue beyond a reasonable doubt. The jury so found. After a careful review of the evidence adduced at the guilt-innocence and punishment phases of trial, we find the evidence sufficient to sustain their verdict. *O'Bryan, supra; Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978) cert. denied, 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978).

In point of error number five, appellant contends that the evidence is insufficient to sustain the jury's affirmative finding to special issue number one [16] Specifically, appellant challenges the sufficiency of the evidence to support deliberateness.

■ While this Court has properly insisted upon deferring to the Legislature the task of defining the term deliberate, we have approximated its meaning in accordance with "common usage" as something more than intentional, *Heckert v. State*,

612 S.W.2d 549, 552 (Tex.Cr.App.1981), and something less than premeditation, *Granviel v. State*, 552 S.W.2d 107, 123 (Tex.Cr. App.1976) cert. denied, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977), a "conscious decision involving a thought process which embraces more than mere will to engage in the conduct." [17] *Lane v. State*, 743 S.W.2d 617, 628–631 (Tex.Cr.App.1987); *Marquez*, 725 S.W.2d at 243–244; *Williams v. State*, 674 S.W.2d 315, 320–322 (Tex.Cr.App.1984); *Russell v. State*, 665 S.W.2d 771, 780 and 783–787 (Clinton, J., dissenting) (Tex.Cr.App.1983) cert. denied, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984) reh. denied, 466 U.S. 932, 104 S.Ct. 1720, 80 L.Ed.2d 192; *Fearance v. State*, 620 S.W.2d 577, 584 (Tex.Cr.App. 1981) (Opinion on appellant's Motion for Rehearing) cert. denied, 454 U.S. 899 (1981); *Ferguson v. State*, 36 Tex.Cr.R. 60, 35 S.W. 369, 370 (1896). Thus, the evidence must support the jury's affirmative finding that appellant's conduct alone constituted a conscious decision—greater than mere will —to cause the death of the victim.

■ The evidence adduced relevant to deliberateness is as follows. Appellant confessed to his participation in the robbery during the course of which a man was killed. He instigated and planned the robbery, picked the store to be "hit", entered the store with a loaded .38 snub-nose revolver, pointed it at the elderly victim and demanded money. When the victim crouched down behind the counter, appellant stated "Don't try it" and opened fire. Although it is disputed as to which defendant's shots caused the fatal wound,[18] it is

---

16. "[W]hether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result...." Art. 37.071(b)(1), V.A.C.C.P.

17. We note that the Legislature has not, as yet, accepted our oft repeated invitation to statutorily define "deliberate" in the context of 37.-071(b)(1). *See, Lane, supra* at 628, n. 7, 630, n. 11 and 630–631 (Duncan, J., concurring); *Williams, supra* at 322, n. 6. Thus no explicit definition can be applied herein. Once again we note the need for a statutory definition and

exemplify the clarification to be afforded by legislative action in this area.

18. In appellant's co-defendant's case, *Williams, supra*, we stated that Wiliams fired the fatal shot. This assumption was based upon Williams' guilty plea and statements accepting responsibility for the murder. However, there is no conclusory proof that the single deadly chest wound was fired by Williams. In fact, evidence adduced in the instant case points toward appellant having fired the deadly shot. Just after the shooting, appellant told the driver of the getaway car that he had to shoot the victim. Appellant also told another accomplice

clear that appellant fired the first shot at close range. Additionally, it was shown at punishment that appellant had committed numerous prior robberies, one in which he shot the victim. This evidences the fact that the instant killing was done by an experienced robber rather than an excited amateur. A few days after the commission of the offense appellant returned the gun to its owner, thus probative of further pre-planning by appellant to commit the instant offense—hence the need to borrow the gun.

In our opinion affirming appellant's co-defendant's case, *Williams, supra*, we stated,

> In *Smith v. State*, 540 S.W.2d 693 (Tex.Cr.App.1976) [cert. denied, 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977)], the defendant entered a grocery store, pointed a gun at the attendant and told him he was being robbed. The attendant made a motion 'behind his jacket' and the defendant called to his co-defendant, after his own gun misfired. The co-defendant shot and killed the attendant. The two defendants then took the money and left.
>
> In *Smith* the evidence was sufficient to support a deliberateness finding even for the defendant who did not actually shoot the victim. The facts of the instant case are more compelling than those in *Smith*. [citation omitted] We find the evidence sufficient to support the jury's affirmative finding on the issue of deliberateness.[19]

*Williams, supra* at 321. Just as in *Smith*, the near mirror-image facts of the instant case, as was recognized in *Williams, supra*, are sufficient to sustain the jury's

finding that appellant individually engaged in a thought process which activated the intentional murder, thus showing deliberateness. *Also see, Livingston v. State*, 739 S.W.2d 311, 338–339 (Tex.Cr.App.1987); *Carter v. State*, 717 S.W.2d 60, 67–68 (Tex. Cr.App.1986) cert. denied, —— U.S. ——, 108 S.Ct. 467, 98 L.Ed.2d 407 (1987); *Santana, supra* at 5–7; *Cordova v. State*, 698 S.W.2d 107, 112–113 (Tex.Cr.App.1985) cert. denied and appeal dismissed, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986); *Green, supra* at 287–289; *Selvage v. State*, 680 S.W.2d 17, 21–22 (1984); *Smith v. State*, 676 S.W.2d 379, 393 (Tex.Cr.App. 1984) cert. denied, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). Appellant's fifth point of error is overruled.

In his sixth point of error, appellant challenges the sufficiency of the evidence to sustain the jury's affirmative finding to the second special issue.[20] Factors to be considered in determining the sufficiency of the evidence to support future dangerousness are the facts of the instant offense, appellant's prior criminal record and any mitigating circumstances. *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Cr.App. 1987); *Livingston, supra* at 340 and cases cited therein.

The evidence adduced relevant to future dangerousness is as follows:

### I. Nature of Offense:

Appellant, by his own confession, entered the store with a loaded gun with the full intent to commit a robbery. He masterminded the robbery, picked the appropriate store to "hit", drew his gun, demanded money and opened fire first, aiming direct-

---

that he fired the first shot which he thought hit the victim in the chest. Additionally, as argued by the prosecution, the angle of the chest wound was consistent with appellant's position during the robbery. It is factually unknown and evidentiarily improvable who fired the fatal shot, but this does not negate the deliberateness of appellant's individual actions. *Santana v. State*, 714 S.W.2d 1 (Tex.Cr.App.1986).

**19.** Although *Smith, supra*, was decided prior to our decision in *Green, supra*, it is still viable authority. In *Green* we approvingly cited *Smith* stating,

"In *Smith* this Court found the evidence sufficient to support the affirmative answers to the special issues based upon facts concerning the defendant's *individual* conduct." *Green, supra* at 286.

Thus, the findings in *Smith* comport with *Enmund–Green* requirements.

**20.** [W]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society...." Art. 37.071(b)(2), V.A.C.C.P.

ly at the victim crouching behind the counter at close range. It is controverted whether the victim was crouching to reach for a gun or to seek cover,[21] but what is known is that appellant's response to the victim's protective action was a controlling directive, "Don't try it" just before opening fire. While the facts of the instant case may not, in and of themselves, be sufficient to sustain a finding of future dangerousness, *see* e.g., *O'Bryan v. State*, 591 S.W. 2d 464, 480–481 (Tex.Cr.App.1979), they are supportive of a planned, calculated and cold-blooded robbery during which appellant did not hesitate to use his gun.

## II. Prior Criminal Record

Appellant's criminal history exhibits a propensity for violent offenses. In early 1979, appellant was convicted of theft. On July 7, 1980, appellant was placed on nine years' felony probation for a robbery conviction. It was during this probationary period that appellant committed the instant capital murder. On August 13, 1980 appellant committed an attempted capital murder while robbing a clerk at a Stop–N–Go convenience store. The facts of this robbery are particularly violent in that appellant demanded money at gunpoint and, when the clerk gave all he had, appellant demanded more. When the clerk was not looking for the additional money quickly enough, appellant shot him in the left shoulder, just above the heart. According to the victim, blood was "shooting out" from his body and appellant remained unthwarted, in the same position and continued to demand money. On October 11, 1980 just two days prior to the instant capital murder, appellant committed another aggravated robbery at a convenience store wherein he took the clerks' wallets and the money from the cash registers at gunpoint. Finally, on June 14, 1981, while in jail pending trial for the instant offense, appellant took part in a contemplatedly violent escape plan involving a loaded gun, home-made knives and tear gas. Appellant's jail report reflects that he tried to take over and run the cell block and that he had a "poor attitude, very cocky, states at booking that he will shoot any deputy that got in his way. Subject has very aggressive attitude and potential agitator."

## III. Mitigating Factors:

Appellant was nineteen years old at the time of committing the instant offense and, unlike many capital defendants, had 13 character witnesses willing to testify for him at punishment. The testimony adduced from these witnesses was that, while in high school, appellant was an outstanding athlete, had average grades and presented no known disciplinary problems. Appellant had dropped out of high school at age 17 to support his wife who had just had a baby. Several family friends testified that they thought appellant could be rehabilitated. Appellant's nineteen year old wife testified that appellant had a small child and should be given another chance. His parents testified that they got divorced when appellant was seven but both had a good relationship with their son. They felt that appellant was in trouble because of the pressures of supporting a family and because he fell in with a bad crowd.

There is evidence to support the jury's determination that appellant would commit criminal acts of violence in the future constituting a continuing threat to society. Appellant's statement that he would "shoot any[one] that got in his way" is borne out through his prior criminal history and the facts of the instant capital murder. A reasonable jury could have found that appellant had a proven propensity for aggravated robberies wherein he exhibited no hesitation to open fire on the chosen victim which was not outweighed by the mitigating factors of his young age, family pressures and possible amendability to rehabilitation. Further, it was reasonable for a jury to have not found the "bad crowd"

---

**21.** Appellant and Williams contend that the victim pulled a gun, but an eyewitness testified that the victim never touched or reached for the gun. Although a gun was routinely kept behind the store counter, it was found after the robbery in its usual place and devoid of fingerprints. It seems highly implausible that the victim pulled up the gun, was fatally shot and then replaced the gun in its normal place, all without leaving any fingerprints.

argument extensively mitigating in light of the fact that some of the prior aggravated offenses were committed by appellant, acting alone, and, in the offenses in which he acted with others, he took an instigative and leadership role. Appellant's sixth point of error is overruled.

In point of error number seven (point two in the Lane brief) appellant challenges the sufficiency of the evidence to support the jury's affirmative finding to special issue number three.[22] We find this contention meritless. The only support for even the submission of this special issue is the controverted evidence that the victim was reaching for a gun in self-defense.[23] Even if this were true, a robbery victim has a right to defend himself without such defense rising to the level of "provocation." A reasonable and rational trier of fact could have found that the seventy year old victim did not provoke appellant and, moreover, appellant's act of opening fire at point blank range was not, in any respect, a reasonable response to the victim's defensive actions. *See, Smith*, 676 S.W.2d at 393; *Smith*, 540 S.W.2d at 696–697; *Williams, supra* at 321. Appellant's seventh point of error (second Lane point) is overruled.

In his ninth point of error, appellant contends that the 1981 statutory amendment to subsection (e) of Article 37.-071, *supra*, providing that a deadlocked jury at punishment requires automatic assessment of life imprisonment, should be applied retroactively to his first trial.[24] *See,* Acts 1981, 67th Leg., ch. 725, p. 2673. The Texas Government Code, however, specifically states that the amendment of a statute does not affect its prior operation or any prior action taken under it. V.T. C.A., Government Code sec. 311.031(a)(1).[25] *See also,* Tex. Const., Art. I, sec. 16 (no

retroactive law shall be made); Art. 1.02, V.A.C.C.P.; *Ridyolph v. State*, 545 S.W.2d 784, 786–787 (Tex.Cr.App.1977) (statutes do not apply retroactively); *Barbee v. State*, 432 S.W.2d 78, 82 (Tex.Cr.App.1968) cert. denied, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969) reh. denied, 396 U.S. 870, 90 S.Ct. 42, 24 L.Ed.2d 127 (Code Construction Act applicable to Code of Criminal Procedure). Because appellant's first trial was held prior to the effective date of the amendment to subsection (e), the amendment has no application. Additionally, a statute is presumed to be prospective in operation unless expressly made retrospective. V.T.C.A., Government Code sec. 311.022;[26] *Pesch v. State*, 524 S.W.2d 299, 301 (Tex.Cr.App.1975) (prospective application presumed). No such retrospective intent is expressed. Appellant's ninth point of error is overruled.

The judgment of conviction is affirmed.

CLINTON and CAMPBELL, JJ., concur in the result.

TEAGUE, J., dissents to the disposition of point of error number 5 (Lane's brief), which concerns the trial judge's erroneous sua sponte excusal of prospective juror Terry Hurzeler.

---

22. [W]hether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

23. See footnote 20, *ante.*

24. See footnote 1, *ante.*

25. Prior law, stating substantially the same, being V.T.C.S., Code Construction Act, Art. 5429b–2, sec. 3.11. *See,* Acts 1967, 60th Leg., ch. 455, p. 1039.

26. Prior law, stating substantially the same, being V.T.C.S., Code Construction Act, Art. 5429b–2, sec. 3.02. *See,* Acts 1967, 60th Leg., ch. 455, p. 1038.