COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL SHAWN AUMOCK, a/k/a MICHAEL SHAWN AMOUCK, | § | No. 08-10-00093-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | Criminal District Court No. 4 |
| | § | |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC # 1164683D) |
| | § | |

**O P I N I O N**

A Tarrant County jury found Appellant, Michael Shawn Aumock, guilty of possession of methamphetamine, a controlled substance, in an amount equal to 200 grams or more but less than 400 grams, including any adulterants or dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) & (e) (West 2010). The jury assessed Aumock's punishment, enhanced by one prior felony conviction, at imprisonment for 60 years. He now brings six issues before this Court.[1] Finding no reversible error, we overrule Aumock's issues and affirm the judgment of the trial court.

**EVIDENTIARY SUFFICIENCY**[2]

In his fifth issue, Aumock argues that the evidence adduced at his trial was factually insufficient to support his conviction. We must reject this argument, however, because Texas criminal law no longer recognizes factual-insufficiency claims. *Brooks v. State*, 323 S.W.3d 893,

---

[1] The record reflects that the Texas Supreme Court transferred this case from the Second Court of Appeals to this Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2] Because evidentiary sufficiency is a threshold issue, we address Aumock's sufficiency issues first. *See* G. Dix & J. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 51:4 (3rd ed. 2011) (appellate determination that evidence is insufficient requires acquittal).

912 (Tex.Crim.App. 2010).  We overrule Aumock's fifth issue.

In his sixth issue, Aumock argues that the evidence adduced at his trial was legally insufficient to support his conviction.  More specifically, he argues that the evidence was insufficient to prove beyond a reasonable doubt that he "was conscious of his connection to the contraband and . . . knew it was contraband."

Consistent with the Fourteenth Amendment's guarantee of due process of law, no criminal defendant may be convicted of an offense and denied his liberty except upon proof beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  In assessing the legal sufficiency of the evidence, under the Fourteenth Amendment, to support a criminal conviction, we consider all the record evidence in the light most favorable to the jury's verdict and determine whether, based on that evidence, any rational jury could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In that analysis, we take the elements of the offense as they are defined by the hypothetically correct jury charge for the case.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009).  Such a charge is one that, among other things, accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

The jury is the sole judge of the weight and credibility of the evidence.  *Brooks*, 323 S.W.3d at 899.  Unlike jurors, we are not fact finders, and we may not re-evaluate the weight and credibility of the evidence; rather, we act only as a "final, due process safeguard" ensuring that the evidence is at least minimally sufficient to reasonably support a finding of guilt beyond a

reasonable doubt. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992).

The grand jury's indictment charged that, on or about July 2, 2009, Aumock "did . . . intentionally or knowingly possess a controlled substance, namely methamphetamine, of two hundred grams or more but less than four hundred grams, including any adulterants or dilutants . . . ." Texas Health and Safety Code section 481.115(a), the statute under which Aumock was charged and convicted, provides in relevant part that "a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1 . . . ." TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2010). Section 481.102 defines "Penalty Group 1," and methamphetamine is one of the controlled substances listed therein. TEX. HEALTH & SAFETY CODE ANN. § 481.102(6) (West 2010). Section 481.002(38) defines "possession" as "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010). To establish unlawful possession of a controlled substance, the State must prove that the defendant intentionally or knowingly exercised care, custody, control, or management over the contraband and that he knew it was contraband. *Dubry v. State*, 582 S.W.2d 841, 843 (Tex.Crim.App. 1979). Section 481.115(e) provides that an offense under Section 481.115(a) is a felony of the first degree if the amount of the controlled substance possessed is 200 grams or more but less than 400 grams, including adulterants and dilutants. TEX. HEALTH & SAFETY CODE ANN. § 481.115(e) (West 2010).

Given all the foregoing, the hypothetically-correct jury charge for the possession offense charged in this case would state the elements of the offense as follows: (1) Aumock; (2) intentionally or knowingly; (3) exercised care, custody, control, or management over; (4) methamphetamine; (5) in an amount equal to 200 grams or more but less than 400 grams,

3

including any adulterants or dilutants; and (6) he knew it was contraband. The question before us is whether, given the evidence adduced at Aumock's trial, any rational jury could have found him guilty of all those elements beyond a reasonable doubt.

At the guilt stage of Aumock's trial, the State presented five witnesses: D. S. Evans, Harold Cussnick, and Brian Clark, all Fort Worth police officers; Garrett Hull, a former Fort Worth police officer; and Jason Allison, a forensic chemist with the Fort Worth Police Department Crime Laboratory.[3] Their testimony, viewed in the light most favorable to the jury's verdict, established the following. On or about July 2, 2009, a confidential informant told Fort Worth police that on that day a man named Shawn Aumock would drive a white Subaru automobile from Plano "to a location [the police] picked in Fort Worth," and that he would be carrying a half-pound of methamphetamine. Shortly thereafter, several Fort Worth police officers, some of them undercover, set up surveillance around the intersection of South Hulen Street and Interstate Highway 30. At approximately 5 p.m., Officer D. S. Evans, in a marked patrol vehicle, spotted the white Subaru and began to follow it. Evans soon observed the driver of the Subaru commit a traffic violation, to wit: changing lanes without signaling.[4] Evans activated his vehicle's overhead lights and stopped the Subaru in a private parking lot on the 2800 block of South Hulen. Evans exited his vehicle, approached the Subaru on foot, and asked the driver, Shawn Aumock, who was alone in the Subaru, for his driver's license and proof of insurance. Aumock had neither, so Evans wrote out a citation, placed Aumock under non-custodial arrest, and took him to jail,

---

[3] Aumock presented one witness, Jesus Cisneros, who pleaded the Fifth Amendment and refused to testify.

[4] "An operator shall . . . signal . . . to indicate an intention to . . . change lanes . . . ." TEX. TRANSP. CODE ANN. § 545.104(a) (West 2011).

4

where, according to Evans, he could "take care of his citations directly."[5,6]   Immediately after Evans' departure, the other police officers in question, most of them undercover, approached Aumock's Subaru and had a certified police dog sniff the outside of the vehicle.   The dog "alerted" at an open window.   One of the officers, Brian Clark, then opened the driver's side door and discovered, in plain view, a clear plastic bag of a "crystal-like substance" hanging out from under the dashboard behind the steering wheel.   Subsequent analysis of the substance in the plastic bag revealed it to be approximately 221 grams (about a half-pound) of methamphetamine, including adulterants and dilutants.

After reviewing the evidence adduced at Aumock's trial, as we have set it forth, we conclude that a rational jury could have found him guilty of all the elements of the offense as defined by the hypothetically correct jury charge.   The evidence showed that Aumock was the driver and sole occupant of the Subaru, that the contraband was a "crystal-like substance" in plain view in that vehicle, that the contraband was conveniently accessible to him, and that there was a considerable amount of it.   We overrule Aumock's sixth issue.

---

[5] A driver's failure to carry a license is a misdemeanor offense for which he may be arrested.   TEX. TRANSP. CODE ANN. § 521.025 (West 2007).

[6] Officer Evans' testimony at the guilt stage included the following:

> Q:   Because [Aumock] was not able to provide you with [a driver's license and proof of insurance], what did you do?
>
> A:   Since he did not have a driver's license on his person, I then detained him in my vehicle and cash bonded him for his citations.
>
> Q:   When you say you "cash bonded him" for the citations, can you explain to the jury why you did that?
>
> A:   Cash bonding is the noncustodial arrest, giving you a ticket or summons for court.   Instead of giving them the citation, you take them directly to the judge or the court or to jail, basically, to where he has to pay for it or take care of his citations directly.

It was implicit in Evans' testimony that Aumock would be returned to his Subaru and would be free to drive away once he had "take[n] care of his citations."

**THE CONFIDENTIAL INFORMANT**

In his first issue, Aumock argues that the trial court erred, at the guilt stage, in denying his motion to compel the State to disclose the identity of its confidential informant. Aumock argues that he made a plausible showing that the informant could give testimony necessary to a fair determination of his guilt or innocence. His argument proceeds as follows:

> Here, the contraband is found falling down from the dashboard [of Aumock's car] but there is no affirmative link to [him]. He makes no furtive gestures. He makes no res gestae statements. There are no fingerprints linking him to it. It is reasonable to hypothesize that the informant or some other person put the contraband there to set up [Aumock]. The only way for [him] to further investigate and possibly find exculpatory evidence would be through interviewing, questioning and cross-examining the informant . . . .

Texas Rule of Evidence 508 provides a qualified privilege against the compelled disclosure of an informant's identity. Rule 508(c)(2), relied upon by Aumock, provides, in relevant part, that,

> [i]f it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination . . . on guilt or innocence in a criminal case, and the [State] invokes the privilege, the court shall give the [State] an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.

Under Rule 508, a defendant bears the burden of making a plausible showing that the informant could give testimony necessary to a fair determination of his guilt or innocence. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App. 1991). "The informer's potential testimony must significantly aid the defendant and mere conjecture or supposition about possible relevancy is insufficient." *Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App. 1991).

In the trial court, Aumock presented no evidence suggesting that he had been "set up" by others. We therefore conclude that his attempt to make a plausible showing amounted to nothing

6

more than conjecture or supposition, and that the trial court did not abuse its discretion in denying his motion to compel disclosure of the informant's identity. We overrule Aumock's first issue.

## MOTION TO SUPPRESS

In his second issue, Aumock argues that the trial court erred, at the guilt stage, in denying his motion to suppress the methamphetamine found in his car. Aumock argues, in effect, that the search of his vehicle was unreasonable, and therefore in violation of the Fourth Amendment, because: (1) it was the fruit of an unlawful stop; and (2) it was carried out without a warrant. The record reflects that the trial court heard Aumock's motion to suppress during the guilt stage and that the court denied the motion at the close of the evidence at the guilt stage.

We turn first to Aumock's argument that the search of his car was unreasonable because it was the fruit of an unlawful stop. Aumock's argument proceeds as follows:

> [Aumock] believes that the State failed to prove that [he] committed a traffic violation, specifically that [he] failed to signal a change of lanes under Texas Transportation Code art. [sic] 545.104. [Officer Evans] testified that [Aumock] failed to signal his turn signal [sic] to indicate a change of lanes from the right to left. The officer did not testify to how [Aumock] allegedly failed to indicate a turn signal . . . . A turn signal can be made with either lighting signal lamps . . . or by using the hand or arm.
>
> .   .   .
>
> [F]ailure to adduce evidence of the specific failed acts renders the initial stop invalid . . . .

We reject this argument, because it was not made in the trial court. *See* TEX. R. APP. P. 33.1.

We turn next to Aumock's argument that the search of his car was unreasonable because it was carried out without a warrant. A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008). In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and

7

is correct under any theory of law applicable to the case. *Id.*

As we discussed above, in reference to Aumock's sixth issue, the State presented evidence at the guilt stage that Officer Evans stopped Aumock's Subaru after he observed Aumock commit a traffic offense, that Evans placed Aumock under non-custodial arrest and took him to jail so that he could "take care of his citations," that other officers then had a certified police dog sniff Aumock's vehicle, that the dog "alerted" at an open window, and that the officers then opened the driver's side door and discovered contraband in plain view. The trial court, as the fact finder on the motion to suppress, was free to believe this evidence. Assuming that the trial court believed this evidence, could it have lawfully denied Aumock's motion to suppress? Yes, the trial court could have, for the following reasons. First, consistent with the Fourth Amendment, a police officer may stop a motorist (or any other individual) if the officer has a particularized and objective basis for suspecting the motorist of criminality, and a traffic offense is, of course, a form of criminality. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Second, once Evans placed Aumock under non-custodial arrest and took him away, the other officers were free to have the police dog sniff the Subaru, because a dog sniff is not a search within the meaning of the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 707 (1983). Finally, once the dog "alerted" at the car window, probable cause existed to believe the car contained contraband,[7] and the police were then free to search the car without a warrant, given that the car was readily mobile and would certainly be driven away once Aumock returned.[8] *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

---

[7] Probable cause sufficient to support a search exists if, under the totality of circumstances, there is at least a fair probability that contraband will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex.Crim.App. 2010).

[8] *See* footnote 6.

In summary, the trial court's ruling denying Aumock's motion to suppress is reasonably supported by the record and is correct under a theory of law applicable to the case. We overrule Aumock's second issue.

## JURY INSTRUCTION

In his third issue, Aumock, citing Article 38.23 of the Texas Code of Criminal Procedure, argues that the trial court erred, at the guilt stage, in denying his request for a jury instruction on the legality of the State's acquisition of the contraband. Amouck argues, somewhat vaguely, that he "raised questions" about the legality of Evans' stop of his car and about the subsequent search of the car.

Article 38.23 provides in relevant part:

In any case where the legal evidence raises an issue [regarding the legality of the State's acquisition of evidence], the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the [law], then and in such event, the jury shall disregard any such evidence so obtained.

Article 38.23 requires a jury instruction only if there is a genuine issue of material fact. *Oursbourn v. State,* 259 S.W.3d 159, 177 (Tex.Crim.App. 2008). A defendant must meet three requirements in order to trigger an Article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issues must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007).

The record reveals that the evidence at the guilt stage did not raise a genuine issue of material fact regarding Evans' stop of Aumock's Subaru or the subsequent police search of it. Therefore, the trial court did not err in denying Aumock's requested instruction. We overrule Aumock's third issue.

9

## MOTION FOR MISTRIAL

In his fourth issue, Aumock argues that the trial court erred, at the punishment stage, in denying his motions for mistrial made during the State's closing argument. Aumock's argument in his fourth issue proceeds as follows:

> [R]eversal because of [the State's] improper and inflammatory [closing argument] is the only adequate remedy. Any one of [the State's] inflammatory arguments would be grounds for reversal but, taken as a whole it becomes painfully obvious that the prosecutor violated the spirit of fair and justifiable argument and, along with the trial court's failure to intervene with a mistrial, denied [Aumock] a fair trial.

Aumock's fourth issue concerns the following portion of the State's closing argument at the punishment stage:

> The State: Should your verdict [on punishment], the number [of years of imprisonment] that you assign to his conduct, should it be to deter his behavior? Well, you can try, but we've already tried to deter his behavior here in the State of Texas on more than one occasion and it hasn't deterred his behavior. However, where I think deterrence does come into play is you're deterring others like him.
>
> Defense Counsel: Objection. That's outside the record and that would be having them base their verdict based on facts outside of this case.
>
> The Court: Well, I'll sustain it in part. Stay inside the record. Okay.
>
> The State: Send a message to the community.
>
> Defense Counsel: Objection, Your Honor. They're not allowed to base their verdict on anything but the facts of this case, not sending a message.
>
> The Court: Sustained.
>
> The State: Okay. Let's talk about rehabilitation.
>
> Defense Counsel: A motion to disregard, Your Honor.
>
> The Court: The jury will disregard the last statement of the prosecutor.
>
> The State: All right. You're not going to deter him. All right. Let's talk about

rehabilitation. You know, I just don't think that this defendant really wants to go this way. He has already had multiple opportunities to make better decisions and to change his life around. He's been on probation before, he's been to the penitentiary.

The Court: One minute.

The State: He has two young kids. And he has continued to commit crimes since they've been born.

This really is about punishment. And as sympathetic as we may be to his family, to his stepdad and his mother and his children, it's really just about punishment. You need to go back there and assign a number, assign a number to his conduct to send him a message.

Remember, this is not a victimless crime. You know that. Your common sense tells you this is not a victimless crime. Not only do we have victims in the community, his kids are victims. And you could never, ever convince me that just because a person has a title of dad, that he is better off being around his children. That is not always true.

You heard his stepdad say, well, it's a do-as-I-say, not do-as-I-do. Well, you know what I think would be the best remedy for his children is for you to assign a number to his conduct and send him away so that they see what the consequences are. You cannot go out and continually commit crimes over --

Defense Counsel: Objection, Your Honor, as basing the verdict on anything but the facts in this case and assigning it based on somebody else -- somebody else besides Mr. Aumock. I object to that.

The Court: Overruled.

The State: You cannot go out and commit crimes over and over and over again without being punished.
Again, while you're assigning a number to his conduct, you aren't the ones really punishing him; it's him doing it to himself. It's him doing it to his parents; it's him doing it to his kids.

As representatives of the State of Texas, we have a duty and obligation to try to protect our community. Okay.

He's dangerous, he is violent, he does carry guns. All right. Now, has he killed anybody? No. But when might that time come?

11

Defense Counsel:   Objection, Your Honor, that's outside the record.

The Court:   Sustained.

Defense Counsel:   Motion to disregard.

The Court:   Jury will disregard the last statement of the prosecutor.

Defense Counsel:   Motion for mistrial.

The Court:   Overruled.

The State:   Disregard that last part, right?   I'm just saying --

Defense Counsel:   Objection, Your Honor, sidebar.

The Court:   Sustained.

The State:   He hasn't been the worst person in the entire world.   We're not saying that.   But he is a dangerous person and he is a violent person, and we're asking you to take him off of our streets so that you -- so that your children -- so that --

Defense Counsel:   Objection, Your Honor.   She's asking the Court to -- the jury to take into account something that's outside the record and assigning it instead of facts of this case.

The Court:   Sustained.

Defense Counsel:   Motion to disregard.

The Court:   Jury will disregard.

Defense Counsel:   Motion for mistrial.

The Court:   Overruled.

A mistrial is the trial court's remedy for improper conduct that is so harmful that the case must be redone.  *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004).   Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.  *Id*.   A trial court's ruling on a motion for mistrial will not be disturbed on appeal absent an abuse of discretion.

12

*Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004).

There are four permissible areas of closing argument: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973). Even if an argument falls outside these four areas, it is not reversible error unless it is extreme or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the accused, into the proceeding. *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App. 1980). Moreover, an instruction to disregard will cure any improper argument unless it is so inflammatory that its prejudicial effect cannot reasonably be removed. *Nichols v. State*, 754 S.W.2d 185, 199-200 (Tex.Crim.App. 1988).

We have examined the closing argument of which Aumock complains in his fourth issue, and we find only one instance in which Aumock's objection was not sustained by the trial court. Aumock does not explain why the trial court erred in that one instance. And, in all the other instances, we do not find improper argument that was so inflammatory that its prejudicial effect could not reasonably be removed by an instruction to disregard. In short, we discern no abuse of discretion on the part of the trial court in its denials of Aumock's motions for mistrial. We overrule Aumock's fourth issue.

## CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.

GUADALUPE RIVERA, Justice

February 8, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)

13