**Martin David PENA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–563–CR.**

Court of Appeals of Texas, Corpus Christi.

June 4, 1992.

Discretionary Review Refused Sept. 30, 1992.

Suzie Johnson, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Sita L. Stone, Asst. Dist. Atty., Nueces County Courthouse, Corpus Christi, for State.

Before FEDERICO G. HINOJOSA, Jr., KENNEDY and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of murder and a repeat felony offender. The jury assessed punishment at 99 years' confinement and a $10,000 fine. By six points of error, appellant complains that the trial court erred in overruling his motion to suppress confessions. By five additional points of error, appellant complains the trial court erred by overruling his objection to the prosecutor's comment that appellant had refused to testify, by denying his request for an instruction to disregard the comment, and by overruling his motion for mistrial. We affirm the trial court's judgment.

Appellant went to his adoptive mother's house on the evening of June 7, 1991, after purchasing some cocaine. Appellant injected himself with some cocaine, left the house to obtain more cocaine, and subsequently returned to the house. His mother called him to her room and asked what he was doing. Appellant became angry, left his mother's room, went to the bathroom, and injected himself with more cocaine. As he exited the bathroom, his mother confronted him, and he turned and walked away. She followed him, angry that he had turned his back on her. He turned around, stuck a knife into her chest, just below the neck, and pushed her back onto her bed. She reached for a pair of scissors on the night stand, but appellant took them and stabbed her 24 more times, killing her.

Appellant returned to the bathroom and injected himself with more cocaine. Later that morning he decided to leave, changed clothes, and took $105 from his mother's purse. He went to his aunt's house and stole her key to his mother's house, so his mother's body could not be found immediately. He then went to pick up his paycheck. He cashed his check, abandoned his bicycle, and disposed of the knife. He went to the Corpus Christi bus station, took a bus to Houston, and from there went to New Orleans. On June 9, 1991, appellant turned himself in to the New Orleans, Louisiana police and confessed to the murder. He then signed a written confession in New Orleans, and on June 18, 1991, after he returned to Corpus Christi, signed a second written confession.

By his first six points of error, appellant complains that the trial court erred in overruling his motion to suppress the confes-

sions. He argues that the first confession was involuntary, due to his intoxication. He maintains that he was not taken before a magistrate until he was returned to Corpus Christi, that the nine-day delay was unreasonable, and that the delay was a cause of the confession.

■ TEX.CODE CRIM.PROC.ANN. art. 15.17 (Vernon Supp.1992) mandates that an arresting officer shall, without unnecessary delay, take the arrestee before a magistrate. Absent a showing of a causal connection between the failure to take an accused before a magistrate and the accused's confession, the validity of a confession is not affected for failure to comply with the statute. *Boyd v. State*, 811 S.W.2d 105, 124 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991). A violation of the requirement that an accused be presented before a magistrate without unnecessary delay will not invalidate a confession voluntarily given after a defendant received his *Miranda* rights. *Id.* 811 S.W.2d at 125; *Von Byrd v. State*, 569 S.W.2d 883, 893 (Tex.Crim.App.1978). Warnings which convey on the face of the statement the exact meaning of the warnings of TEX.CODE CRIM. PROC.ANN. art. 38.22 (Vernon 1979), though they may not do so in exactly the statutory language, are sufficient to comply with the requirements of that statute. *White v. State*, 779 S.W.2d 809, 827 (Tex.Crim.App. 1989), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990).

Appellant presented himself to Sergeant Aucoin of the New Orleans Police Department on June 9, 1991, and told Aucoin that he murdered a woman in Texas. Aucoin placed appellant under arrest and gave appellant the *Miranda* warnings. Aucoin then elicited from appellant the location of the offense, confirmed that a murder had occurred at that location, and left a message with Corpus Christi homicide detectives that he had a suspect in the case. Aucoin then told appellant that he had confirmed that a homicide had occurred on Osage Street, that he would contact homicide officers, that appellant could speak to the homicide officers, and again gave appellant *Miranda* warnings.

■ Detective Berard, a New Orleans police department homicide officer, arrived at the station some twenty minutes later. He asked appellant if he had been read and understood his *Miranda* rights, and appellant indicated affirmatively. Berard transported appellant to the main police administration building, where Berard obtained a "Rights of Arrestee" form. Berard read the form to appellant, explained his rights to him, asked him if he understood his rights, and asked him to sign the form. Appellant then signed the "Rights of Arrestee" form.

The "Rights of Arrestee" form warns an arrestee as follows:

I. You need not make any statements; that is, you have a right to remain silent;

II. Anything you say may be used against you in trial;

III. You have a right to consult with and obtain the advice of an attorney, before answering any questions;

IV. If you cannot afford an attorney, the court will obtain an attorney to represent you and advise you;

V. You have a right to have your attorney or an appointed attorney present at the time of any questioning or giving of any statement.

The form also states that if the arrestee does not fully understand and voluntarily waive the right of counsel, then he may not be questioned. It also states that if the person at any time during the questioning indicates that he does not wish to be questioned, then the questioning must cease. After reading the form and signing it, appellant gave a written confession to the murder. The confession states that appellant signed the "Rights of Arrestee" voluntarily.

Appellant was returned to Corpus Christi on June 18, 1991. He was immediately taken before a magistrate, who advised him of his rights. Appellant signed a second written confession that day.

Appellant was warned of his *Miranda* rights on three separate occasions before he gave the first confession. The written warnings sufficiently complied with art. 38.22. The confession is valid if it was voluntarily given.

 Appellant complains that his confession was not voluntarily given due to his intoxication. Intoxication, while relevant, is not determinative per se of the voluntariness of a confession. *Nichols v. State*, 754 S.W.2d 185, 190 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989). The question is whether appellant's intoxication rendered him incapable of making an independent, informed choice of free will. *Id.*

Sergeant Aucoin testified that appellant did not appear to be intoxicated. Detective Berard testified that appellant appeared "tired and remorseful" but not intoxicated. Appellant did not testify. While there is some evidence that appellant had taken cocaine the previous night, there is no evidence in the record to demonstrate how much cocaine appellant consumed before entering the New Orleans police station, nor is there any evidence concerning how appellant was rendered incapable of making an independent, informed choice of free will. *See id.* 754 S.W.2d at 190–191. We overrule appellant's first six points of error.

By points of error seven through eleven, appellant complains that the trial court erred by overruling appellant's objection to the prosecutor's comment that he refused to testify, by denying appellant's request for an instruction to disregard the comment, and by overruling his motion for mistrial.

 A prosecutor's comment of a defendant's failure to testify at the punishment stage of trial offends the State Constitution, the Federal Constitution, and State law. *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Crim.App.1984). The Court of Criminal Appeals has previously expounded on what constitutes an improper comment on a defendant's failure to testify:

> In order to violate the right against self-incrimination and therefore Article 38.08

... the offensive language, when viewed from the jury's standpoint, must be manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. It is not sufficient that the language might be construed as an implied or indirect allusion to the defendant's failure to testify. In applying this standard, the facts and circumstances of each case must be analyzed to determine whether the language used was of such a character. If the remark called the jury's attention to the absence of evidence that only the testimony from the appellant could supply[,] the conviction is subject to being reversed.

*Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 902, 112 L.Ed.2d 1026 (1991), (quoting *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988)).

 Appellant complains that the following argument constitutes an improper comment on his failure to testify:

> [Prosecutor]: In closing arguments during punishment [sic], you heard the arguments from defense counsel—and I'm not criticizing her; she is doing her job, ladies and gentlemen—but you heard her argue that the officers in New Orleans stated that the defendant was remorseful. Well, there's two different kinds of remorse: there is the kind of remorse that you have when you're sorry for what you've done; and there is the kind of remorse that you have when you're sorry for yourself and you're worried about what's going to happen to you.
>
> [The Court]: Seven minutes.
>
> [Prosecutor]: Thank you, Your Honor. What you have to do to decide is how remorseful if he was remorseful and what he was remorseful about.

Defense counsel objected that the prosecutor was commenting on the defendant's failure to testify. The trial court overruled the objection, denied a request to instruct

the jury to disregard the comment, and denied a motion for mistrial.

In applying the "necessarily and naturally understood by the jury" standard, the Court of Criminal Appeals found the following argument, listing types of persons worthy of average punishment, to be an improper comment on the defendant's failure to testify:

> Someone who was a first offender, a perfectly clean record. Somebody who made a mistake for the first time. *Someone who was remorseful for their actions. Somebody who admits error.* (Emphasis in original)

*Swallow v. State*, 829 S.W.2d 223, at 225 (Tex.Crim.App.1992). The Court stated that this comment directed the jury to look not only at the defendant's guilt phase testimony, in which he claimed his intoxicated appearance was due to cold medicine, but also at his failure to testify at punishment.

By contrast, the Court of Criminal Appeals has found the following not to be an improper comment:

> You have had a chance to sit here this whole trial, listen to the evidence, look at the demeanor of the witnesses on the stand. And you have had chance [sic] to look at everything. See any remorse in this courtroom other than comes from the—

*Caldwell v. State*, 818 S.W.2d 790, 800 (Tex.Crim.App.1991). The Court found this statement ambiguous and open to interpretation as a reference to testimony presented in the courtroom concerning the defendant's lack of remorse. Given that there were different but equally plausible interpretations of the comment, the Court held that the statement did not meet the *Dickinson* criteria, in that the jury would not necessarily and naturally understand the comment to refer to the defendant's failure to testify. *Id.* at 801.

We find the instant case to be similar to *Caldwell.* The prosecutor did not directly refer to appellant as a person who failed to exhibit any characteristic. The prosecutor merely invited the jury to speculate what

kind of remorse appellant felt. Defense counsel previously had argued, at the end of the guilt phase, that the New Orleans police officers had testified that the defendant showed remorse. The trial court instructed the jury that it could consider all the evidence from the guilt phase when determining punishment. Considering the facts and circumstances of the case, we do not find that the language used was an improper comment on the defendant's failure to testify. While appellant argues that only he could provide information regarding what kind of remorse he felt, a jury would not necessarily and naturally take the prosecutor's challenge to determine what kind of remorse appellant felt to be a comment on his failure to testify. In fact, the record contains evidence that explains what kind of remorse appellant felt. Aucoin testified that appellant sat on the bench, crying, and saying remorsefully, "I can't believe I killed my mother. I don't know how I'm going to live with this. She was a good woman. I just can't believe I did this." The prosecutor only directed the jury's attention to evidence favorable to the defendant on the issue of punishment. We overrule points seven through eleven.

We affirm the trial court's judgment.