

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00670-CR

Zion Michael **TALAVERA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR4671A
Honorable Jefferson Moore, Judge Presiding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
              Luz Elena D. Chapa, Justice
              Irene Rios, Justice

Delivered and Filed: April 17, 2024

AFFIRMED

After pleading guilty to murder, Appellant Zion Michael Talavera now appeals the trial court's denial of his motion to suppress his incriminating statements. We affirm.

## BACKGROUND

In 2019, Detective Ramos of the Bexar County Sheriff's Department was investigating several related convenience store robberies on the west side of San Antonio. In the midst of his

---

[1] Magistrate Andrew W. Carruthers presided over Appellant Talavera's motion to suppress, entered Findings of Fact and Conclusions of Law, and recommended that the motion be denied. Presiding Judge Moore followed Magistrate Carruthers' recommendation and adopted the findings and conclusions.

investigation, one robbery ended in a shooting. Talavera and his co-defendants were apprehended as suspects. The clerk who was shot succumbed to his injuries, and Talavera was charged with murder. Talavera was eighteen years old at the time.

When Detective Ramos interviewed Talavera, Talavera insisted that the clerk was not supposed to die. Detective Ramos responded, "Can you explain to me what was supposed to happen, Z? Man-up. We just talked about manning-up, didn't we?" Talavera said, "Just some…just money."

Detective Ramos continued, "So, your intention was not to kill him?" Talavera answered, "No." Detective Ramos asked again about Talavera's intent, and Talavera responded, "I want a lawyer." Detective Ramos asked, "You want a lawyer? So, you don't wanna talk to me anymore, Z?"

Talavera answered by protesting that Detective Ramos's surveillance photo from the convenience store did not actually resemble him. Detective Ramos explained that it was not his only photo from surveillance cameras and then asked if Talavera wanted to continue talking.

Talavera wanted to see another photo, and he wanted an explanation of how the case could become a capital murder case. Detective Ramos asked again, "Do you wanna keep talkin' to me or not, Z? Yes or no?" Talavera answered, "You're good."

Detective Ramos confirmed, "Ok. So, without your attorney, you're gonna talk to me a little bit right now, right?" Talavera answered, "Yeah, I thought I need one; I don't know if I need one or not." Detective Ramos pressed the question, "So, if you ... if you ... if you want your attorney, then I'll ... I'll ... I'll split; me and my partner will split. But if you wanna talk to me…."

Detective Ramos tried to excuse himself from the room, but Talavera said, "I don't think anyone would go to the store to go shoot someone like that. And you're trying to tell me that you think that was me, to go in there to go shoot this dude." Detective Ramos again asked whether

Talavera actually wanted to talk to him. Then he tried to excuse himself again, but Talavera continued to ask about how the case could be construed as intentional murder. Detective Ramos told Talavera to relax, and Talavera responded, "We're not done talking."

Talavera continued to ask Detective Ramos how the murder could be considered intentional and how Detective Ramos could think that Talavera was the murderer. After the two discussed the case a little longer, Talavera confirmed that he and his co-defendants were the perpetrators of the robbery that ended in murder.

Talavera later moved to suppress his confession. At the hearing on the motion to suppress, Detective Ramos testified. He described Talavera's request for counsel and subsequent waiver. He also responded to questions about Talavera's apparent mental health, acuity, and alertness. Detective Ramos testified that Talavera seemed lucid and not intoxicated.

In support, the State offered, and the trial court admitted, the video of Talavera in the interview room and a transcript of the interview. The video showed Talavera both before and during his interview with Detective Ramos. For approximately two hours before the interview began, Ramos waited in the interview room with his hands cuffed behind him. He appeared simultaneously restless and tired or bored. He sat and slouched. He rested his head against the wall. He stood and walked. He lay down on the floor and napped. Sometimes he grunted or mumbled when he changed position. He sat in a chair and waited. Then, when the interview began, he answered Detective Ramos's questions in an audible and understandable manner.

Although Talavera argued that his waiver of his right to counsel was invalid and although he suggested that his slouching and napping were signs of potential intoxication, the trial court denied Talavera's motion to suppress. Talavera accepted a plea agreement and was sentenced to fifty years in prison with a $1,500 fine. Talavera now appeals the trial court's denial of his motion to suppress.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997); *accord Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under this standard, we defer to the trial court's express or implied determination of historical facts based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review the trial court's application of law de novo. *See id*.

## ADMISSIBILITY OF TALAVERA'S INTERVIEW STATEMENTS

### A.    Parties' Arguments

Talavera cursorily argues that the statements he made to Detective Ramos after he requested an attorney should be suppressed because his subsequent waiver of counsel was not valid.

He more pointedly argues, though without reference to legal authority or to the record, that his statements should be suppressed because he received "evidence of [his] intoxication" from a co-defendant's statement at some time after the suppression hearing and before his plea hearing. Talavera suggests that he should have had an opportunity to interview his co-defendants about evidence of his own purported intoxication to better prepare for the hearing on his motion to suppress.

The State argues that the trial court correctly denied Talavera's motion to suppress because Talavera reinitiated his discussion with Detective Ramos after requesting an attorney. The State also argues that Talavera has waived any issue regarding disclosure related to his confession because his citations to the record on this point are inadequate.

**B.** **Law**

 *1.*  *Admissibility of a Confession Following a Suspect's Invocation of the Right to Counsel*

When a suspect invokes his right to counsel, "interrogation 'must cease until an attorney is present.'" *Nelson v. State*, 463 S.W.3d 123, 127 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting *Minnick v. Mississippi*, 498 U.S. 146, 150 (1990); *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)). An interviewing officer may attempt to clarify the suspect's desire for counsel by asking a few explanatory, noncoercive questions. *See Barnes v. Johnson*, 160 F.3d 218, 225 (5th Cir. l998) (quoting *Davis v. United Stales*, 512 U.S. 452, 461 (1994)); *Hernandez v. State*, No. 04-01-00271-CR, 2002 WL 461374, at *3 (Tex. App.—San Antonio, Mar. 27, 2002) (mem. op., not designated for publication). But if the interviewing officer persists in asking questions that he should know are reasonably likely to elicit an incriminating response, then any statements that follow are subject to suppression. *See Barnes*, 160 F.3d at 225.

If the suspect "initiate[s] further communication" and "thereafter validly waive[s] h[is] right to counsel," then any statements that follow may be considered admissible. *See id*. As explained by the trial court in this case, there is a two-step procedure to determine whether a suspect has waived a previously invoked right to counsel. *See Oregon v. Bradshaw*, 462 U.S. 1039 (1983) (citing *Edwards v. Arizona*, 451 U.S. 477, 486 n.9 (1981)). The first step requires proof that the suspect himself initiated further communication with the authorities after invoking the right to counsel. *See id*. at 1044. The second step requires proof that the suspect validly waived the right to counsel. *See id*. at 1046.

 *2. Admissibility of a Confession if There Is Evidence of Intoxication*

If there is any evidence that an officer has interrogated the suspect while the suspect is intoxicated, such evidence can be relevant to the outcome of a motion to suppress, but it is not

determinative. *See Pena v. State*, 832 S.W.2d 697, 700 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd) (*citing Nichols v. State*, 754 S.W.2d 185, 190 (Tex. Crim. App. 1988)); *Powell v. State*, 636 S.W.2d 863, 865 (Tex. App.—Fort Worth 1982, no pet.). For a suspect's alleged intoxication to affect the admissibility of his confession, "[t]he question is whether appellant's intoxication rendered him incapable of making an independent, informed choice of free will." *Pena*, 832 S.W.2d at 700 (citing *Nichols*, 754 S.W.2d at 190).

But, generally, "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986); *accord Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

### 3. Issue Waiver

As the State argues, "[w]hen a party fails to adequately brief a complaint, the complaint is waived on appeal." *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003) (citing TEX. R. APP. P. 38.1). But adequately briefing a complaint can be impossible if an appellant has waived his complaint in the trial court. *See* TEX. R. APP. P. 33.1; *Belle v. State*, 543 S.W.3d 871, 879 (Tex. App.—Houston [14th Dist.] 2018, no pet.). To preserve a complaint in the trial court, "the record [must] demonstrate (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial judge either ruled on the request, objection, or motion, or he refused to rule and the complaining party objected to that refusal." *Reece v. State*, 474 S.W.3d 483, 487 (Tex. App.—Texarkana 2015, no pet.) (citing *Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005)). Accordingly, if an appellant does not refer the appellate court to any place in the record where his complaint was made known to the trial court and an adverse ruling was obtained, then he has likely failed to meet *two* necessary prerequisites for appellate review. *See Belle*, 543 S.W.3d at 879 (citing TEX. R. APP. P. 33.1, 38.1).

**C.      Analysis**

The trial court entered an extensive summary of the law and evidence related to Talavera's suppression hearing.  It noted that when Talavera requested an attorney, Detective Ramos used no impermissible interrogation techniques to reinitiate the discussion, but rather engaged in an accepted "good police practice" by attempting to clarify Mr. Talavera's intent.  Detective Ramos asked, "You want a lawyer?  So, you don't want to talk to me anymore, Z?"  *See Barnes*, 160 F.3d at 225.

The trial court found that "[i]mmediately following Detective Ramos's single clarifying question, Mr. Talavera responded by questioning Detective Ramos about an important detail in the investigation—he asked about the body tattoos in the surveillance photo Detective Ramos had shown him."  The trial court concluded that when Talavera engaged with Detective Ramos, stating, "You can't see any of my tattoos," and "How do you know that's my tattoo?" he was expressing a "willingness and desire" to "open up a more generalized discussion relating directly or indirectly to the investigation."  *See Bradshaw*, 462 U.S. at 1045.

Regarding the second step in the *Edwards* test, the trial court found that Detective Ramos asked Talavera whether he wanted to continue talking without an attorney present and that Talavera "responded in the affirmative."  *See Bradshaw*, 462 U.S. at 1046.  The trial court found that when Detective Ramos asked Talavera two more times whether he wanted to continue talking without an attorney present, Talavera "responded by asking more questions relating directly to the investigation."  When Detective Ramos then attempted to step out of the room for a moment, Talavera stopped him, stating, "We're not done talking."  The trial court concluded that Talavera validly waived his right to counsel by implication.  *See Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010).

The trial court ultimately concluded that the *Edwards* test was satisfied and that Talavera's waiver of his right to counsel after reinitiating the dialogue with Detective Ramos was made knowingly, intentionally, and voluntarily. *See Bradshaw*, 462 U.S. at 1046.

Regarding Talavera's suggestion of potential intoxication, the trial court cited Detective Ramos's testimony that Talavera appeared lucid and not intoxicated. The trial court found that "there was no indication during the interview that Mr. Talavera was sleep-deprived, intoxicated, intellectually disabled, or that he in any way lacked the mental capacity to understand and voluntarily waive his rights." *See Pena*, 832 S.W.2d at 700.

Talavera has offered no compelling argument for reversal. Rather, he has described the pleadings and arguments below and then announced that the issue is now before this court for review. Upon our review, we conclude that the trial court did not abuse its discretion by denying Talavera's motion to suppress. *See id*.

We also conclude that Talavera has waived any complaint related to "evidence of intoxication" that might have been presented to him after the suppression hearing and before his plea hearing. *See* TEX. R. APP. P. 33.1, 38.1. Talavera has provided no relevant record citations on this point, and we can find no indication from the record that Talavera acted on any evidence he might have received in the time between the suppression hearing and his plea hearing. *See* TEX. R. APP. P. 33.1, 38.1.

We overrule Talavera's arguments on appeal and affirm the trial court's judgment.

## CONCLUSION

On this record, we conclude that the trial court did not abuse its discretion by denying Talavera's motion to suppress. We also conclude that Talavera has waived any argument

regarding any disclosure related to his confession he may have received after his suppression hearing and before he pleaded guilty.  We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH