**Opinion filed September 25, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00159-CR
_____

**CHRIS CJ MARTINEZ, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 89th District Court**
**Wichita County, Texas**
**Trial Court Cause No. DC89-CR2023-0948**

**M E M O R A N D U M   O P I N I O N**

Appellant, Chris CJ Martinez, Jr., was indicted for the second-degree felony offense of possession with intent to deliver a controlled substance in penalty group 1-B, fentanyl, in an amount of one gram or more but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.1123(a), (c) (West Supp. 2024). The jury convicted Appellant of the charged offense and assessed his punishment at twenty

years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. The trial court sentenced him accordingly.

In two issues, Appellant asserts that: (1) the trial court erred when it failed to instruct the jury as to the voluntariness of the statements that Appellant made to law enforcement; and (2) the trial court erred when it admitted a photograph during the punishment phase, which Appellant contends was irrelevant and unduly prejudicial. We affirm.[1]

## I. *Factual Background and Procedural History*

On February 28, 2023, Officer Hayden King of the Wichita Falls Police Department was responding to an automobile accident when he was "[waved] down" and directed to a vehicle (Appellant's vehicle) that was parked at a gas station. After Officer King stopped at this gas station, Appellant exited his vehicle, and Officer King spoke to him. Officer King smelled the odor of burnt marihuana emanating from Appellant's vehicle, which prompted him to search the vehicle and Appellant's person. During the search, Officer King recovered a "small amount" of marihuana and twenty-two small blue pills.[2] Because Officer King suspected that the blue pills that he seized from Appellant's vehicle were fentanyl, Appellant was arrested; he later admitted that the pills were fentanyl.[3] Officer King then transported Appellant to the Wichita Falls Police Department where he was interviewed by law enforcement. A grand jury subsequently indicted Appellant for the offense of

---

[1]Pursuant to Misc. Docket Order No. 24-9013 issued by the Texas Supreme Court on March 21, 2024, this appeal was transferred to us from the Second Court of Appeals. Therefore, as the transferee court, we must decide the issues raised in this appeal in accordance with the precedent of the Second Court of Appeals if its precedent conflicts with ours. *See* TEX. R. APP. P. 41.3.

[2]Officer King also seized Appellant's cell phone and $1,394 in "small denomination bills."

[3]The blue pills recovered from Appellant's vehicle were subsequently tested; the results showed that they contained fentanyl.

possession with intent to deliver a controlled substance, fentanyl, in an amount of one gram or more but less than four grams.

On January 5, 2024, the State filed a notice of its intent to offer at trial Appellant's recorded interview with law enforcement. On April 12, Appellant filed a motion in limine and other objections challenging the admissibility of the statements that he made to law enforcement during his interview. On April 15, after the conclusion of voir dire, the trial court conducted a hearing on Appellant's motion and objections. After the hearing, the trial court found that Appellant's statements were made voluntarily and were thus admissible. Later, during the guilt/innocence phase, Appellant's trial counsel re-urged his objections to the admission of Appellant's statements, which the trial court overruled.

A. *Voluntariness of Appellant's Statements*

During the guilt/innocence phase, Officer King testified about his observations and interactions with Appellant at the gas station. Officer King stated that Appellant was "staggering left to right while he was speaking" and that he had "mumbled and slurred" speech. Based on his observations, Officer King suspected that Appellant was "under the influence of either alcohol or a narcotic," so he requested that Appellant perform a horizontal gaze nystagmus (HGN) test; Officer King did not observe any nystagmus during the test. Officer King also asked Appellant if he had inhaled or ingested any intoxicants, or if he had "swallowed any pills," and Appellant responded that he had not used any drugs or alcohol that day. However, Appellant did admit to Officer King that he was "addicted to fentanyl" and that he had ingested fentanyl the previous day.

Officer King testified that he was "concerned about [Appellant's] medical well-being" and he carefully observed Appellant because it appeared that Appellant might be under the influence of fentanyl. Officer King testified that he noticed that

Appellant was "nodding off, almost falling asleep" while he was seated in the backseat of Officer King's patrol unit.

Officer Taylor Shoffit of the Wichita Falls Police Department testified about his observations of Appellant during their encounter at the gas station, and the voluntariness of Appellant's statements during his interview. Officer Shoffit stated that, when he first interacted with Appellant at the gas station, he observed a "bluish green" substance "hanging out of [Appellant's] left nostril." Officer Shoffit noted that the color of the substance on Appellant's nose was the same as the pills that Officer King had recovered from Appellant's vehicle.

After Appellant was transported to the Wichita County Jail, Officer Shoffit read Appellant the required *Miranda* and statutory warnings. Appellant signed a written acknowledgment that his rights had been read and explained to him before the interview commenced and that he intended to waive his rights. Based on his discussions with Appellant, Officer Shoffit determined that Appellant understood the purpose of the interview and that he was competent to waive his rights and make a statement knowingly and voluntarily, if he chose to do so.

When asked about whether Appellant was intoxicated, Officer Shoffit stated that he believed that Appellant was under the influence of an illegal substance during the interview based on the presence of the "substance on [Appellant's] nose" and his "slurred speech." However, Officer Shoffit also testified that he believed, based on his training and experience, that Appellant was not "so intoxicated or so under the influence" that he did not understand the purpose of the interview and the attendant decisions he could make. Moreover, Officer Shoffit noted that he asked Appellant if he was under the influence of any drugs during the interview. According to Officer Shoffit, Appellant stated that "he hadn't taken anything" on the day of the interview, but that he had ingested fentanyl "the night before," and that he typically took "about 10 [pills] a day."

4

Officer Scott Schenck of the Wichita Falls Police Department also testified about his observations of Appellant and the voluntariness of his statements during the interview. Officer Schenck testified that he first spoke with Appellant at the gas station, and he recalled seeing residue on Appellant's nose. In this regard, Officer Schenck stated that, during the interview, Appellant admitted to using approximately ten fentanyl pills per day, and that he "snorted" them. When asked by Appellant's trial counsel if Officer Schenck observed "a lot" of residue on Appellant's face, Officer Schenck stated that the extent to which a person's drug usage would affect that person was "dependent on how long [that person had] been using fentanyl." Officer Schenck testified that he believed that Appellant's admitted fentanyl use was "a higher amount" compared to the "usual amount that [he's] heard people [say] that they use [each] day."

Officer Schenck testified that, during the interview, Appellant's speech was "slurred" and he "rock[ed] back and forth" in his chair. But, although Officer Schenck believed that Appellant was "under the influence," Officer Schenck primarily attributed Appellant's behavior to nervousness rather than drug use. Officer Schenck noted that Appellant's speech "[got] better at times during the interview." Additionally, Officer Schenck testified that Appellant cooperated with law enforcement by providing the names of other individuals who were associated with the distribution of fentanyl.

In addition to the officers' testimony, Appellant's recorded video interview with Officers Shoffit and Schenck was admitted at trial and published to the jury. During the charge conference, Appellant did not object to the form or substance of the trial court's charge, nor did he request the inclusion of a voluntariness instruction.

B. *Admission of the Photograph During the Punishment Phase*

During the punishment phase, Officer Shoffit testified to the contents of Appellant's cell phone, which included a photograph of a digital news article of an arrest that involved a fentanyl overdose, titled "Man arrested for murder in fentanyl death of MSU student." After counsel for the State offered the photograph, Appellant's trial counsel objected to its admission during a bench conference on the grounds of relevance and unfair prejudice.

At the bench conference, counsel for the State argued that the photograph was relevant because the image showed Appellant's awareness of fentanyl's nature and "its effects." In response, Appellant's trial counsel argued that the photograph was irrelevant because the individual discussed in the news article was not Appellant, and the photograph "seem[ed] more prejudicial than probative." Appellant's trial counsel also argued that it "seem[ed] like [the photograph] would just be irrelevant that [they] had multiple incidences [that Appellant] was aware of that there were overdoses on fentanyl" because the State had "already established" Appellant's awareness through witness testimony. The trial court overruled Appellant's objections and admitted the photograph.

The State then offered text messages between Appellant and another individual, "My Brother Chapo" (Chapo), which the trial court admitted without objection. After these text messages were admitted, the following exchange occurred between the State and Officer Shoffit, who was later asked to read the contents of the text messages to the jury:

> [THE STATE]: So this last message here . . . we'll start with that one. Is that -- is that a picture message? A message with a picture attached to it?
>
> [OFFICER SHOFFIT]: Yes.

[THE STATE]: And is the picture in that message State's Exhibit 22?

[OFFICER SHOFFIT]: Yes.

[THE STATE]: Is that State's Exhibit 22?

[OFFICER SHOFFIT]: Sorry.  Yes.

[THE STATE]: So who sent that picture?

[OFFICER SHOFFIT]: That was from [Appellant's] phone to [Chapo].

The State then questioned Officer Shoffit about Appellant and Chapo discussing the contents of the news article that was depicted in the photograph.  Later, Officer Shoffit was asked if he had any reason to believe that Appellant had any connection to the case that was described in the article; Officer Shoffit said that he did not.  Appellant's trial counsel did not object to Officer Shoffit's testimony concerning the contents of Appellant's text messages with Chapo or the article depicted in the admitted photograph, nor did Appellant's trial counsel cross-examine Officer Shoffit on these issues.

## II.  *Standards of Review*

### A.  *Charge Error*

Reviewing complaints of charge error is a two-step process.  *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)).  First, we must determine whether error exists.  *Id.*  Second, if there is error, we must decide whether the appellant was harmed and if the harm is sufficient to require reversal.  *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd).  The applicable standard of review to be utilized for charge error depends on

7

whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *The Admission of Evidence*

Whether to admit or exclude evidence at trial is a preliminary question that the trial court determines. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *see Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (The admission of photographs over an objection is within the sound discretion of the trial court.). This standard also applies to a trial court's decision to admit or exclude extraneous-offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Barron v. State*, 630 S.W.3d 392, 410 (Tex. App.—Eastland 2021, pet. ref'd). We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the

zone of reasonable disagreement.  *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).  Furthermore, we will uphold a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case.  *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016).

Pursuant to Article 37.07, Section 3(a) of the Code of Criminal Procedure, evidence may be offered "as to any matter the court deems relevant to sentencing," including "the prior criminal record of the defendant, his general reputation, his character, . . . the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act."  CRIM. PROC. art. 37.07 § 3(a)(1) (West Supp. 2024).  Deciding what punishment to assess is a normative process that is not intrinsically fact bound.  *Beham*, 559 S.W.3d at 478.  However, the concept of relevance as set out in Rule 401 in the Texas Rules of Evidence plays a role in the trial court's admissibility determination of punishment evidence.  *Id.* Evidence is relevant to sentencing within the meaning of the statute "if it is 'helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'"  *Id.* at 479 (quoting *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007)).

"[T]he trial court has wide discretion to deem virtually any matter relevant to a proper sentence."  *Beham*, 559 S.W.3d at 480.  It abuses its discretion "only when the reviewing court can say with confidence that by no reasonable perception of common experience does the proffered evidence inform a legitimate area of normative inquiry."  *Id.* (internal quotation marks omitted).

### III.  *Analysis*

#### A.  *Voluntariness Instruction*

In his first issue, Appellant argues that the trial court erred when it failed to charge and instruct the jury on the general voluntariness of his statements.  *See* CRIM.

9

PROC. art. 38.22, § 6. The record shows, and Appellant concedes, that he neither requested the inclusion nor did he object to the omission of a voluntariness instruction in the trial court's charge. Nevertheless, Appellant now contends on appeal that the trial court was required to submit this instruction because it was "the law applicable to the case." CRIM. PROC. art. 36.14. Here, we must first address whether there is error in the charge; if there is none, our analysis ends. *See Campbell*, 664 S.W.3d at 245 (citing *Ngo*, 175 S.W.3d at 743); *Loza v. State*, 659 S.W.3d 491, 497 (Tex. App.—Eastland 2023, no pet.) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

A trial court has an absolute duty to sua sponte prepare a charge that accurately sets out the law that is applicable to the specific charged offense. *See Oursbourn v. State*, 259 S.W.3d 159, 179–81 (Tex. Crim. App. 2008). Article 38.22, Section 6, provides for a general voluntariness instruction by which the jury is asked to determine whether a defendant's statement was made voluntarily. *Id.* at 173. When an applicable statute requires an instruction under certain circumstances, that instruction is a part of the "law applicable to the case," and the trial court errs if it fails to so instruct the jury. *Id.* at 179–81. Thus, to obtain a reversal of his conviction because of the trial court's failure to sua sponte provide what Appellant contends was a required instruction, Appellant must show that Article 38.22, Section 6 was the "law applicable to the case." *Estrada v. State*, 313 S.W.3d 274, 299 (Tex. Crim. App. 2010) (citing *Oursbourn*, 259 S.W.3d at 174–76).

A voluntariness instruction under Article 38.22, Section 6 is only required "*where a question is raised* as to the voluntariness of a statement [made by] an accused" and the issue of voluntariness has been litigated in some manner before a jury. *Oursbourn*, 259 S.W.3d at 173–76 (quoting CRIM. PROC. art. 38.22, § 6); *see Aldaba v. State*, 382 S.W.3d 424, 429 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *Miller v. State*, 666 S.W.2d 269, 274 (Tex. App.—Dallas 1984, pet. ref'd).

10

Although a factual dispute is not necessary to justify the submission of this instruction, "some evidence must have been presented to the jury that the defendant's confession was not given voluntarily." *Oursbourn*, 259 S.W.3d at 176 n.59 (quoting *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007)). As such, a defendant is not entitled to an Article 38.22, Section 6 voluntariness instruction if no reasonable jury could find that the facts presented at trial, whether disputed or undisputed, rendered a defendant incapable of making a voluntary statement. *See Estrada*, 313 S.W.3d at 300 (citing *Oursbourn*, 259 S.W.3d at 175–76); *Day v. State*, 696 S.W.3d 720, 736 (Tex. App.—San Antonio 2024, pet. ref'd). Thus, when no evidence is presented to a jury to raise the issue of whether a defendant's statements were voluntarily made, the trial court does not err if it does not include such an instruction in its charge. *See Oursbourn*, 259 S.W.3d at 175; *Aldaba*, 382 S.W.3d at 429 (citing *Vasquez*, 225 S.W.3d at 545).

Appellant contends that the trial court was required to submit a voluntariness instruction in its charge because the record contains evidence suggesting that he was intoxicated or under the influence of drugs or other substances at the time of his interview, and thus he could not have "knowingly, intelligently, and voluntarily" waived his rights under Article 38.22. *See* CRIM. PROC. art. 38.22, §§ 2(a), 3(a)(2). The State responds that, in support of his argument, Appellant relies on his testimony that he had taken fentanyl the day before the interview and thus he may have been impaired. The State asserts that Appellant "directs this court to no evidence by which a reasonable jury could have determined" that he was incapable of making a voluntary statement because of his alleged impairment. We agree with the State.

A defendant's statement may be used against him if the defendant made it freely and voluntarily and without compulsion or improper persuasion. CRIM. PROC. art. 38.21 (West 2023). "The determination of whether a confession is voluntary is based on an examination of the totality of circumstances surrounding its

11

acquisition." *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (quoting *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995)); *see Lopez v. State*, 610 S.W.3d 487, 497 (Tex. Crim. App. 2020). Intoxication is one of many factors that is considered in determining whether a statement is made voluntarily; however, one's intoxication does not render a defendant's statements involuntary per se. *See Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). Therefore, "[w]hen there is evidence of the defendant's use of narcotics, medications, or other mind-altering agents, the question becomes whether those intoxicants prevented the defendant from making an informed and independent decision." *Williams v. State*, 502 S.W.3d 262, 272–73 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *Paolilla v. State*, 342 S.W.3d 783, 792 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd)); *see Jones*, 944 S.W.2d at 651.

Here, Appellant argues that he properly raised the issue of voluntariness based, in part, on: (1) testimony about Appellant's fentanyl addiction; (2) the officers' observations and testimony regarding Appellant's recent use of fentanyl prior to his arrest; (3) the testimony of Officer King and Officer Shoffit that they believed Appellant was "under the influence" when he made his statements; and (4) Officer King's testimony that he was concerned for Appellant's well-being because of his fentanyl use. While the record shows that multiple witnesses believed that Appellant could have been under the influence of drugs or other intoxicants when his statements were made, this evidence alone does not demonstrate that Appellant was incapable of making an independent or informed decision to make such statements voluntarily. *Jones*, 944 S.W.2d at 651. Further, Appellant does not identify or direct us to any testimony or other evidence in the record, and we have found none, which shows that his statements were made involuntarily, or that, during the interview, he was impaired because of his drug use to such an extent that he could no longer understand the purpose of the interview, what was occurring, or

make an informed decision as to whether he should speak to law enforcement. *See Williams*, 502 S.W.3d at 272; *see also Williams v. State*, No. 09-14-00194-CR, 2016 WL 5417449, at *24 (Tex. App.—Beaumont Sept. 28, 2016, pet. ref'd) (mem. op., not designated for publication).

In this case, there is no evidence upon which a reasonable jury could conclude that Appellant's statements to law enforcement were made involuntarily. Officer Shoffit testified that although Appellant appeared to be "under the influence," Appellant was capable of deciding whether to voluntarily or knowingly waive his rights before making any statement. Similarly, Officer Schenck testified that Appellant understood the questions he was asked during the interview, and he recalled that Appellant provided helpful information to law enforcement in response to their questions. The officers' testimony is corroborated by the video recording of Appellant's interview, which demonstrates that (1) Appellant was informed of his rights prior to the commencement of the interview, and (2) Appellant affirmatively waived his rights. Moreover, the recorded interview also shows that Appellant exhibited a rational understanding of law enforcement's questions and inquiries, and that he provided responsive answers to their questions during the interview.

While there is some evidence that Appellant may have ingested fentanyl pills the day before his arrest, there is no evidence that demonstrates the quantity of drugs, if any, Appellant had taken prior to his interview, or when such drugs were ingested by him before his arrest. *See Pena v. State*, 832 S.W.2d 697, 700 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd). Furthermore, when asked about his drug use, Appellant denied having taken any pills "that day." Thus, even if Appellant had ingested fentanyl on the day he was arrested, there is no evidence that this drug use rendered his statements involuntary during the interview. *See Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994); *Aldaba*, 382 S.W.3d at 429 (citing

13

*Vasquez*, 225 S.W.3d at 545); *Pena*, 832 S.W.2d at 700; *see also Davis v. State*, 313 S.W.3d 317, 338 (Tex. Crim. App. 2010).

Therefore, because there is no evidence from which a rational jury could reasonably find that Appellant's statements were made involuntarily, we conclude that the trial court did not err by not including an Article 38.22, Section 6 instruction in its charge. *See Oursbourn*, 259 S.W.3d at 181; *Jones*, 944 S.W.2d at 651.

Accordingly, we overrule Appellant's first issue.

B. *Admission of Evidence at the Punishment Phase*

In his second issue, Appellant argues that the trial court erred when it admitted a photograph of a news article concerning a fentanyl-related death (State's Exhibit No. 22) during the punishment phase because this evidence was irrelevant, unduly prejudicial, and its admission harmed Appellant. In response, the State argues, in part, that Appellant waived his complaint because Appellant failed to object when the same or similar evidence was offered by the State through the admission of other uncontested evidence, namely: (1) Appellant's text messages (State's Exhibit No. 23), which contained the same complained-of photograph; and (2) Officer Shoffit's testimony concerning the content of Appellant's text messages to Chapo where he discussed the article depicted in the photograph.

To preserve a complaint for appellate review, the complaining party must present a specific, timely objection or motion to the trial court that states the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1)(A); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020); *see* TEX. R. EVID. 103(a); *Arevalo v. State*, 675 S.W.3d 833, 844–45 (Tex. App.—Eastland 2023, no pet.). Furthermore, a party must object each time inadmissible evidence is offered unless the complaining party obtains a running objection or a ruling from the trial court on his complaint. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); *see Geuder v. State*, 115 S.W.3d 11,

13 (Tex. Crim. App. 2003); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). Otherwise, "[a]ny purported error in the admission of complained-of evidence is cured when the same or similar evidence is offered and admitted without objection elsewhere during [a defendant's] trial." *Arevalo*, 675 S.W.3d at 846 (citing *Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990)); *Ruiz v. State*, 631 S.W.3d 841, 864 (Tex. App.—Eastland 2021, pet. ref'd); *Nicholls v. State*, 630 S.W.3d 443, 449 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

In this instance, even if we concluded that the trial court abused its discretion when it admitted the complained-of photograph during the punishment phase, which we do not, any such error would not have resulted in harm to Appellant. As we have said, an evidentiary ruling regarding the admissibility of evidence will not result in reversal when the same evidence is admitted without objection. *Leday*, 983 S.W.2d at 717–18 ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." (quoting *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978))). Here, Appellant did not object to the admission of Appellant's text messages with Chapo, and Officer Shoffit testified, without objection, that the text messages contained the same photograph that Appellant had previously objected-to outside the presence of the jury. Thus, any alleged error in the trial court's decision to admit the complained-of photograph over Appellant's earlier objection was waived when the same evidence was admitted, without objection, through

Appellant's text messages to Chapo and Officer Shoffit's testimony.[4] *Arevalo*, 675 S.W.3d at 847; *see Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (citing *Valle*, 109 S.W.3d at 509); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.— Fort Worth 2012, no pet.).

Furthermore, Appellant also waived any purported error in the trial court's admission of the photograph because "[a]n objection to photographic evidence is waived if the same information contained in the photograph is conveyed to the jury in some other form." *Ford v. State*, 919 S.W.2d 107, 117 (Tex. Crim. App. 1996) (quoting *Havard v. State*, 800 S.W.2d 195, 205 (Tex. Crim. App. 1989)). After the trial court overruled Appellant's relevance and prejudice objections to the admission of the photograph, counsel for the State asked Officer Shoffit several questions about Appellant's discussion with Chapo concerning the fentanyl article; Appellant did not assert any objection to this testimony. As such, we conclude that Officer Shoffit's testimony established the same facts that the State sought to illicit by the admission of the photograph itself—that Appellant was aware of the contents of the article and the dangers of fentanyl use. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (holding that while appellant preserved error as to the admission of two photos, she did not preserve error as to all other evidence of her gang affiliation);

---

[4]We note that while Appellant specifically objected to the admission of the photograph outside of the presence of the jury, Appellant's subsequent affirmative "no objection" response to the admission of State's Exhibit No. 23, which also contained the objected-to photograph, "by itself, serve[s] as an unequivocal indication that a waiver was both intended and understood." *Thomas v. State*, 408 S.W.3d 877, 884–86 (Tex. Crim. App. 2013) (holding that a defendant's "no objection" statement generally waives a previously preserved error unless the record "plainly demonstrates" that the defendant and trial court understood otherwise); *see Upchurch v. State*, 656 S.W.3d 170, 176–77 (Tex. App.—Fort Worth 2022, no pet.); *Redmond v. State*, 629 S.W.3d 534, 546 n.14 (Tex. App.—Fort Worth 2021, pet. ref'd); *Rivera v. State*, No. 11-23-00104-CR, 2024 WL 4151926, at *2 (Tex. App.—Eastland Sept. 12, 2024, no pet.) (mem. op., not designated for publication); *see also Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015) (holding that any ambiguity regarding whether an abandonment was intended or understood should be resolved in favor of finding waiver); *Sharper v. State*, 485 S.W.3d 612, 616 (Tex. App.—Texarkana 2016, pet. ref'd) ("Since the record does not plainly demonstrate that [Appellant] did not intend to abandon his Sixth Amendment objections, we find that [Appellant] has failed to preserve this error for our review.").

*Redmond*, 629 S.W.3d at 546 n.14 ("[A]ny error in the admission of such testimony was rendered harmless by [the appellant's] failure to object to evidence of the same underlying fact; namely, a photograph depicting [the appellant's] bank robbery); *Clay*, 361 S.W.3d at 767 ("[B]ecause Wallace provided testimony about the Louisiana records without objection before and after appellant's objection to the admission of the records and because appellant failed to obtain a running objection, we conclude that he forfeited his objection to the records' admission.").

We conclude that the trial court did not abuse its discretion when it admitted the complained-of photographic evidence. *See Arevalo*, 675 S.W.3d at 846 (citing *Johnson*, 803 S.W.2d at 291); *Nicholls*, 630 S.W.3d at 449 (citing *Valle*, 109 S.W.3d at 509).

Accordingly, we overrule Appellant's second issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


September 25, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.